61 So.2d 474 (1952)
LINCOLN TOWER CORP.
v.
DUNHALL'S-FLORIDA, Inc.
Supreme Court of Florida, Special Division B.
November 21, 1952.
Loftin, Anderson, Scott, McCarthy & Preston, Robert H. Anderson and D.P.S. Paul, Miami, for appellant.
Sibley & Davis, Miami Beach, for appellee.
FABISINSKI, Associate Justice.
Appellant filed in the Court below a bill entitled in Chancery as landlord against appellee as tenant, to construe the terms of a twenty-one year lease; an action at law was at issue ready for trial at the time the bill was filed, raising substantially the same issues sought to be adjudicated in the contemplated declaratory decree. Appellant contends that the pending law action would not finally resolve the issues in dispute between the parties. And it is alleged that it was the intention of the tenant to file a series for alleged breaches of the lease to harass the landlord. Appellant has been compelled heretofore to defend a Chancery action of similar nature filed on December 15, 1947, resulting in a decree in favor of the tenant for damages in excess of $100,000. The present bill prayed that appellee be enjoined from further prosecution of the action at law. The Chancellor dismissed the bill "without leave to amend".
Both the common-law action and the bill seek to raise issues as to eleven separate alleged breaches of the terms of the lease. In considering the motion to dismiss, all allegations of the bill well pleaded must be taken as true. It will be necessary to analyze the various alleged breaches at some length to determine whether the common law action is a suitable vehicle to set at rest the differences between the parties.
The first claim for damages arises out of the contention of the tenant that the landlord is required to install a 4,000 gallon oil storage tank so that the tenant might purchase oil in larger quantities and thereby secure the oil at a more favorable price. There is no express provision in the lease covering this installation. There is a general provision that equipment shall be of quality, construction and character equal to the highest standards, and equal to the standards of three named cafeterias and one named service restaurant. It is apparent that this issue involves a mixed question of law and fact.
*475 The second claim raises the question as to whether the cement floors in the garbage room have sufficient pitch to provide proper drainage for ready washing down and cleaning. The answer to this question requires reference to and study of the plans and specifications not made a part of the lease except by reference, and this raises a question of fact as well as of law.
The third claim undoubtedly involves proof by parol evidence as to whether the sewage disposal piping has proper pitch to provide automatic flow from the kitchen area.
The fourth claim refers to the outside door of the garbage room, and evidently is dependent upon a comparison of similar equipment as indicated in the comment under the first claim. It raises an issue of fact.
The fifth claim raises an issue of fact as to whether or not certain electric wiring and conduits were installed as required by plans and specifications.
The sixth claim raises an issue of fact as to whether the power room is adequate as to size, ventilation and whether certain supports to reduce noise and vibration are provided.
The seventh claim raises an issue of fact as to sufficiency of air conditioning or ventilation of patrons' rest rooms. This probably might be disposed of by interpretation of the lease, as a matter of law, as there seems to be slightly conflicting provisions therein.
The eighth claim raises an issue of law as to whether the lease requires a separate air conditioning system for the dining room.
The ninth claim raises an issue of fact as to the sufficiency of the steam heating system, evidently as to whether it provides sufficient steam capacity to supply the steam tables properly.
The tenth claim seems dependent on the measure of quality of equipment commented on in reference to the first claim, which involves an issue of fact.
The eleventh claim relates to the use of parking facilities, and may undoubtedly be settled as a matter of law by interpretation of the lease.
Under our practice, the trial Court may recommend a special verdict, but the jury is not bound to follow such recommendations. Florida East Coast Ry. Co. v. Lassiter, 58 Fla. 234, 50 So. 428.
It will be observed from the analysis of the several breaches alleged in the common law suit, only three can be said to be susceptible of determination by the Court as a matter of law. Even then it is extremely doubtful whether such a determination, since it would be to a large extent in pais, could be pleaded as res judicata in a subsequent suit.
Of the eight remaining issues, since it is not common practice to recommend special verdicts on interrogatories propounded to the Jury, and there can be no certainty that the Jury would follow the recommendations if made, neither of the parties could be assured that it will be advised as to the conclusions of the jury on any one or more of the issues of fact submitted to it.
In other words, the finding of a general verdict by the jury, while forming a basis for a judgment which would be res judicata as to all existing breaches of the agreement, would leave the road wide open to subsequent litigation of the same questions, for claimed subsequent breaches, even though the jury may have found that the claim for seven out of the eight alleged violations of the lease were wholly unfounded, and that the landlord was not required to perform in the manner claimed by the tenant. And a subsequent jury may conceivably determine such issues of fact directly contrary to that of the first jury, and determine that the landlord was bound to perform as claimed by the tenant in every particular.
Since one of the purposes of the present bill in Chancery was to enjoin the further prosecution of the common law action, counsel conceived it to be necessary for the plaintiff to initiate proceedings in that forum. It does not follow that the plaintiff in the common law action is thereby deprived of a jury trial as to any or all of the alleged violations of the terms of the lease by the landlord. *476 Section 87.08, F.S. 1951, F.S.A., provides:
"When a proceeding under this chapter involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the circuit court in which the proceeding is pending. In order to settle questions of fact necessary to be determined before judgment can be rendered, the circuit court may direct their submission to a jury. When a declaration of right or the granting of further relief based thereon shall involve the determination of issues of fact triable by a jury, such issues may be submitted to a jury in the form of interrogatories, with proper instructions by the court, whether a general verdict be required or not. Neither this section nor any other section of this chapter shall be construed as requiring a jury to determine issues of fact in equity cases."
Only the first sentence of this section is copied from the Uniform Declaratory Judgments Act, and we have found no decisions interpreting the last three sentences, nor are any cited to us. However, we see no necessity of interpreting the last sentence literally, but construe it as a prohibition only against the submission of issues of fact to a jury which are traditionally within the province of an equity court to determine, leaving wide latitude in other respects to the Court, as to the submission to the determination by a jury of those issues properly triable at common law, under authority of the next preceding sentence.
In the case of Thillens, Inc. v. Cooper, 345 Ill. App. 145, 102 N.E.2d 562, 564, the Court had before it a matter which it held to be properly determinable under the Illinois statute relating to declaratory judgments in a court of law. An injunction was issued by a Judge assigned to common law matters. It was contended that the Judge was without jurisdiction to issue an injunction, because he was not a Chancery Judge. The Court made the familiar statement that actions brought under the declaratory judgments statutes are neither actions at law nor in equity, but sui generis, and continued:
"While no specific provision is made as to whether or not the action shall be brought on the legal or on the equitable side of the court, it apparently was the intention of the legislature that the forum would depend on the issues involved and the relief sought. In the case under consideration the primary and essential question involves a determination of the constitutionality and construction of a statute. That is a legal issue. The injunctive relief sought is merely incidental, seeking to maintain the status quo until the constitutional question can be determined. We are of the opinion that Judge Fisher had jurisdiction in the premises."
We have no serious doubt that plaintiff has the right in equity under the statute to a determination of the legal effect of the lease under which it and defendant are operating. And we are constrained to agree with appellant that the determination of the issues in the common law suit may be inconclusive as to its liability vel non for its performance or non-performance under its terms. It seems to us to be evident that a jury to which are submitted proper interrogatories will be able to determine finally, for the present and future guidance of the parties, whether or not the performance of plaintiff meets the standards required by the lease. And we think that it is immaterial whether the cause is entitled at common law or in equity, or that it partakes of the nature of both, so long as the right to jury trial of pertinent issues is preserved. At best, a determination of the issues of fact by a jury will be a complicated and confusing task, and whatever is done by way of clarifying the issues beforehand will operate to secure more exactitude and certainty in judgment.
"To make the statute applicable the pleading must show that there exists the necessity of judicial determination of the proper construction of the written instrument involved and of the plaintiff's rights under such construction." *477 Lippman v. Shapiro, 151 Fla. 327, 9 So.2d 636.
Reversed for proceedings not inconsistent herewith.
SEBRING, C.J., and THOMAS and ROBERTS, JJ., concur.