167 So.2d 731 (1964)
SPENCER LADD'S, INC., a corporation, Appellant,
v.
Robert E. LEHMAN et al., Appellees.
No. F-289.
District Court of Appeal of Florida. First District.
October 6, 1964.
Rehearing Denied October 23, 1964.
*732 Thames & McCollum, Jacksonville, for appellant.
Phillips & McFarland, Clearwater, for appellees.
WIGGINTON, Judge.
Plaintiff has appealed an original and an amended order rendered by the trial court granting defendants' motion for a new trial unless within ten days from the date of each order plaintiff filed in the cause a remittitur of a portion of the damages awarded it by the jury. It is plaintiff's contention on appeal that the first order entered by the trial court is a nullity insofar as it purports to grant a new trial for the reason that it fails to specify the ground or grounds upon which the order is premised as required by law. It is plaintiff's further contention that because more than ten days elapsed between the rendition of the original and amendatory orders purporting to grant a new trial, the court was without jurisdiction to amend its original order and therefore the purported amendatory order is void and ineffectual.
Plaintiff sued defendants Robert E. Lehman and Gov-Co. of Jacksonville, Inc., a corporation, charging wrongful eviction from its place of business and for conversion of its merchandise. By its complaint plaintiff sought both compensatory and punitive damages. During the trial the court permitted plaintiff, without objection of defendants, to introduce evidence as to the financial ability of each defendant. This evidence was offered in support of plaintiff's prayer for punitive damages. After trial the jury rendered its verdict finding in favor of the plaintiff and against both defendants, awarded compensatory damages in the sum of $11,952.00 and punitive damages in the sum of $17,500.00. The verdict was general in character and the *733 awards of damages were made jointly and severally against both defendants. Upon consideration of the motion for new trial filed by defendants the trial court rendered an order reciting that, "If plaintiff, within ten days, shall file a remittitur of that portion of the verdict which assesses punitive or exemplary damages of $17,500.00, a new trial in accordance with the motion of the defendants will be denied; otherwise, a new trial is granted." Eleven days later the trial court of its own motion rendered an amended order reciting that, "If plaintiff, within ten days, shall file a remittitur of that portion of the verdict which assesses punitive or exemplary damages of $17,500.00, a new trial in accordance with the motion of the defendants will be denied; otherwise, a new trial is granted upon the ground that the court erred in admitting evidence of the financial standing of the defendants. Kellenberger v. Widener, District Court of Appeal, Second District of Florida, No. 4230, July Term 1963 [159 So.2d 267]." Plaintiff refused to file the remittitur directed by the trial court in each of the orders here questioned, but in lieu thereof has elected to bring this appeal contending that the trial court committed error in rendering its orders purporting to grant a new trial and its action should be reversed with directions that judgment be entered in accordance with the jury's verdict.
Appellant first contends that the original order directing either the entry of a remittitur by plaintiff or an award of a new trial in accordance with defendants' motion is a nullity in that it fails to recite therein the ground or grounds on which the new trial is ordered.[1] Appellant's attack upon the questioned order is well taken and must be sustained. It has been held so frequently as not to require an elaborate citation of authorities that an order granting a new trial which fails to specify therein the ground or grounds upon which the new trial is ordered is a nullity and of no effect.
Appellant further contends that the subsequent order granting a new trial rendered sua sponte eleven days after rendition of the original order is likewise a nullity. It bases this contention upon the proposition that the trial court was without jurisdiction to correct or to amend its original order granting a new trial after expiration of ten days from the rendition of the original order. We are unable to agree with appellant in this regard.
The statute above cited and quoted in the footnote affirmatively requires the trial court to indicate in the order granting a motion for a new trial the particular ground or grounds upon which the motion is granted and the new trial is ordered. Any order granting such a motion which fails to comply with this requirement of the statute either through mistake, inadvertence or oversight is defective. Such order, however, is subject to seasonable correction. The decisions rendered by the appellate courts of this state recognize that any judgment, order or decree rendered by a trial court may be amended by that court to speak the truth or to supply inadvertently omitted facts or recitals any time before appeal of the order is taken.[2] Additionally, the Florida *734 Rules of Civil Procedure, as amended effective September 30, 1962, provide that clerical mistakes in judgments, decrees or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the record on appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.[3] We therefore hold that the trial judge was authorized to render the subsequent order granting a new trial which had the effect of amending the original order by supplying the ground on which the motion for new trial was granted. Appellant's attack on this order upon the ground stated must be rejected.
Appellant further assaults the amendatory order granting the new trial upon the contention that the trial court erred as a matter of law in holding that the verdict of the jury should be set aside and a new trial granted on the ground that evidence establishing the financial standing of the defendants was improperly admitted in the trial.
The trial court concluded its amendatory order granting a new trial by citing the Kellenberger decision recently rendered by the Second District Court of Appeal of Florida.[4] In Kellenberger, plaintiff brought suit to recover against joint defendants Widener and Barnett both compensatory and punitive damages. During pre-trial proceedings plaintiff sought to elicit from defendants through the vehicle of written interrogatories evidence as to the financial status of the defendant Widener in support of his claim for punitive damages. The trial court sustained defendants' objection to this interrogatory and Kellenberger sought review and reversal of that order by writ of certiorari to the Second District Court of Appeal. In affirming the trial judge's order sustaining defendants' objection to the interrogatory in question, the Second District Court of Appeal cited and adopted the rule recited in American Jurisprudence as follows:
"`According to the weight of authority, where there are two or more defendants in a tort action, evidence of the wealth or financial standing of one or more of them is inadmissible and cannot be considered by the jury in assessing punitive damages. The authorities that uphold the rule proceed upon the theory that consideration of the individual wealth of one or more defendants would result in an unjust punishment and burden being imposed on defendants less able to pay, where they are all liable jointly. * * *'"[5]
One of the decisions representing the majority view and which is frequently cited by other courts in passing upon the point now under consideration is the Washington Gaslight Co. decision.[6] In that case the Supreme Court of the United States said:
"Punitive damages are damages beyond and above the amount which a plaintiff has really suffered, and they are awarded upon the theory that they are a punishment to the defendant, and not a mere matter of compensation for injuries sustained by plaintiff. While all defendants joined are liable for compensatory damages, there is no justice in allowing the recovery of punitive damages, in an action against several defendants, based upon evidence of the wealth and ability *735 to pay such damages, on the part of one of the defendants only. As the verdict must be for one sum against all defendants who are guilty, it seems to be plain that, when a plaintiff voluntarily joins several parties as defendants, he must be held to thereby waive any right to recover punitive damages against all, founded upon evidence of the ability of one of the several defendants to pay them. * * *"
Based upon the foregoing authority the Second District Court of Appeal adopted what purports to be the majority view in the United States. That decision was one of first impression in Florida and is entitled to great weight.
Appellant earnestly asserts that the Kellenberger decision embraces an unsound principle which should not be recognized as the law of this state. It bases its argument on several propositions.
Appellant first contends that the so-called majority rule followed in Kellenberger is not applicable under the procedural law of Florida. It argues that the so-called majority rule has as its foundation the assumption that every verdict rendered in an action against multiple defendants seeking punitive damages must be general in character and joint and several as to all defendants found liable. It is appellant's position that general verdicts in actions of this kind are not necessarily required, but that the jury may render a special verdict in which the punitive damages to be awarded may be apportioned between the respective defendants found liable. In support of this position appellant invites our attention to the decision rendered by the Second District Court of Appeal in Sauer v. Sauer[7] and to the case decided by the Third District Court of Appeal in Great Atlantic & Pacific Tea Company, Inc. v. Varner.[8] Each of these cases were actions at law brought against multiple defendants in which plaintiffs sought both compensatory and punitive damages. In each case a verdict was rendered by the jury awarding plaintiff compensatory damages against all defendants jointly, and a separate amount of money as punitive damages against the individual defendants named in the verdict. While it is true that special verdicts apportioning the amount of punitive damages to be paid by each of the several defendants held jointly liable to the plaintiff were rendered in these cases, the form of verdict was neither questioned nor commented upon by the court in either case, nor was the propriety of such verdict raised or passed upon.
Florida is a common law state in which verdicts in common law actions are normally general in character and are enforceable jointly and severally against all defendants for the full amount of damages awarded thereby. Florida has no statute nor rule of court which entitles a party in an action of this kind to require the jury to render a special verdict separating the punitive from the compensatory damages and apportioning the punitive damages between those found to be jointly liable therefor. The adoption of a rule of procedure by our Supreme Court under the authority granted it by our Constitution which would serve such a purpose would indeed be helpful and forever place at rest the necessity of deciding whether the majority rule above quoted, or the minority rule hereinafter discussed, should be established as the law of this state.
It has long been recognized in this jurisdiction that where no specific statutory provision on the subject exists, special verdicts may be found as at common law. The court is not justified, however, in directing the jury to find a special verdict, though it may, in its discretion, in *736 a proper case recommend one. A jury has the right to decline finding any other than a general verdict.[9] Thus it is seen that under procedural law as it exists in Florida today, the trial court in its discretion, either sua sponte or upon motion of either party, may request the jury to render a special verdict separating and apportioning between joint defendants the amount of punitive damages which each may be required to pay plaintiff. It is clear, however, that neither party has a right, as a matter of law, to demand the rendition of a special verdict in any given case, and even though requested to do so by the court, the jury is not required as a matter of law to render a special verdict if it elects not to do so. It must be held, therefore, that the rationale of the majority rule set forth in the Kellenberger case is applicable under the procedural law now in effect in Florida.
Appellant urges that the minority rule followed by many states of this nation leading to a result contrary to that reached by the majority rule more nearly conforms to a proper concept of justice. The minority rule is predicated upon the underlying theory that in all actions where punitive damages are sought against multiple defendants, it is proper for the jury to assess damages against all the defendants jointly according to the amount which, in the jury's judgment, the most culpable of them ought to pay and whatever would be competent evidence as to one would be competent as to all of the defendants. These decisions affirm the admissibility of evidence tending to establish the wealth and financial ability of any one or more of the defendants as a guide to the jury in determining the amount of punitive damages to be awarded in the case. They theorize that under any contrary rule a wealthy defendant, who was principally implicated in a wrong giving rise to a claim for punitive damages might escape the payment of just and reasonable damages by having others, without character or property, associated in the unlawful act. Appellant insists that Florida has heretofore aligned itself with the minority view by the decision rendered by our Supreme Court in 1899 in connection with the case of Jones v. Greeley.[10]
In the Jones case an action at law was brought by Greeley against two Jones brothers operating as a partnership in which both compensatory and punitive damages were claimed by the plainiff. In its charge on the law of the case the trial court instructed the jury that it might take into consideration the financial ability of the defendants and that if the jury believed the defendants did actually intend to injure the plaintiff by the publication complained of, then the jury must award heavier damages than it would award in case it found that the defendants did not have such intention. On appeal the Supreme Court held that insofar as the charge relates to the financial ability of the defendants, the objection to it presents a much-mooted question, and the authorities are in conflict. It was held, however, that both the weight of authority and reason are in favor of the doctrine that if the cause of action is one for which the jury concludes from the evidence that punitive damages should be awarded, the pecuniary circumstances of the defendants are a proper matter of evidence. The point decided by the court in this case related to the admissibility of evidence regarding a defendant's pecuniary worth in an action in which punitive damages are claimed by the plaintiff. Whether such evidence should have been excluded because there were multiple parties defendant was neither raised, discussed nor decided by the court. Although at first blush the Jones case may appear to support the minority rule as contended by appellant, we think that upon *737 careful analysis such a conclusion is unwarranted.
Having reached the conclusions hereinbefore stated, our task would be much easier if we merely announced an adherence to the majority rule adopted by the Second District Court of Appeal in the Kellenberger case, and rendered our judgment affirming the order appealed. We are of the view, however, that the question presented is of sufficient importance to justify further analysis and discussion.
As seen from the Washington Gaslight Co. case above quoted, most of the decisions which adhere to the majority rule appear to justify that principle on the theory that when a plaintiff voluntarily joins several parties as defendants under a system of procedure whereby the verdict must be for one sum against all defendants who are guilty, he must be held thereby to waive any right to recover punitive damages against all, founded upon evidence of the ability of one of the several defendants to pay them.[11] These decisions proceed on the assumption that a plaintiff is not unduly prejudiced by this rule for he has the election of discontinuing or dismissing his action against the impecunious defendants and proceeding to judgment only against the defendant of considerable means, thereby rendering admissible evidence of financial worth against the defendant best able to pay. Under the system of procedure presently effective in Florida, this reasoning is unsound. Our rules provide that an action against one of several defendants may not be dismissed at the plaintiff's instance after answer by that defendant has been filed save upon order of the court and upon such terms and conditions as the court may deem proper. In the event such defendant has filed a counterclaim in the case, the action shall not be dismissed against him over his objection unless the counter-claim can remain pending for independent adjudication by the court.[12] It thus appears that a plaintiff is not completely free to discontinue or dismiss his action against those defendants whom the evidence may show to be impecunious, and if the court sustains such defendants' objection to a dismissal of the action as to them, or imposes as a condition of dismissal terms with which the plaintiff is unable to comply, the plaintiff will be precluded under the majority rule from introducing any evidence as to the financial worth or ability of any of the defendants as a guideline to the jury in assessing punitive damages against them.
There is another evil of paramount importance which inevitably flows from the majority rule adopted in Kellenberger. Punitive damages are assessable dependent upon circumstances showing moral turpitude or atrocity in the defendant's conduct in causing an injury that is wanton and malicious or gross and outrageous to such an extent that the measured compensation of the plaintiff should have an additional amount added thereto as smart money against the defendant, by way of punishment or example as a deterrent to others inclined to commit similar wrongs.[13] As has been so frequently said in cases of this kind, the amount of punitive damages to be awarded lies peculiarly within the discretion of the jury because an amount which would operate as a proper punishment to one man might be inadequate to that effect upon another by reason of their difference in pecuniary condition. Under the majority rule which excludes from jury consideration evidence as to the financial ability of the defendants, the jury is required to rely entirely upon guess, speculation and conjecture in determining what amount of money to be awarded as punitive damages will be sufficient to punish the wrongdoer and deter others from committing a similar outrageous act in the future. *738 To leave the amount of damages to be awarded by the jury entirely to speculation and conjecture is contrary to well-settled principles of law, and will result most frequently in an injustice either to the plaintiff or to the defendant. Furthermore, after a verdict awarding punitive damages under the majority rule has been rendered and is objected to by either party on the ground that the award of punitive damages is either inadequate or excessive, what standard may the trial judge use in reaching a determination as to whether such a verdict should be affirmed or set aside? In the event such a verdict is set aside by the trial judge and a new trial awarded, what is there in the record to which an appellate court may look in order to determine whether the trial court abused its discretion in setting aside the verdict and requiring that the case be tried again?
Because of the foregoing considerations, and no doubt others which escape us at the moment, we are constrained to the view that the rationale of the majority rule adopted in the Kellenberger case is not entirely applicable in light of the rules of procedure effective in Florida, and its enforcement as a rule of law will prevent rather than insure a just result in cases of this kind. While we have the greatest respect for decisions rendered by our sister Courts of Appeal, and almost uniformly follow their decisions in passing upon cases involving the same points which are brought to this court for review, there infrequently comes a time when after careful consideration we find ourselves in a position of respectful and sincere disagreement. This appears to be one of such instances in which we are disinclined to follow the rule adopted by our sister court in Kellenberger. We are impelled to hold that in a case where punitive damages are properly allowable by a jury, evidence which is competent against one of several defendants is competent against all and that the wealth, character and influence of a defendant implicated in a malicious and willful wrong committed toward another may be shown by competent evidence, and what may be shown as to one defendant is competent as to all.[14] If this rule results in the hardship on impecunious defendants which the majority rule professes to obviate, it must be remembered that it is the wanton, willful and malicious acts of such defendants which bring the rule into operation. They should not be granted partial immunity from the consequences of their acts by a rule excluding evidence of their financial worth at the expense of an innocent and injured plaintiff
As alluded to above, the most practical solution to the problem presented by this appeal would be adoption by the Supreme Court of a rule of trial precedure which requires special verdicts in common law actions seeking punitive damages, and providing that such damages shall be apportioned between the defendants found to be liable therefor. Where a special verdict is either requested by the trial court in the exercise of its discretion, or required pursuant to a rule of procedure adopted by the Supreme Court, the jury should be instructed that evidence as to the financial worth of any one defendant may not be considered in determining the amount of punitive damages, if any, to be assessed against any other defendant found liable therefor. Such a rule of law would permit the jury to base its verdict upon evidence as to the financial worth of the respective defendants against whom punitive damages are to be assessed as permitted by the minority rule, and at the same time prevent any undue hardship being visited upon the more impecunious defendants as contemplated by the majority rule.
For the reasons and upon the authorities above set forth, the order granting a new trial appealed herein is reversed and the *739 cause remanded with directions that judgment be entered on the verdict in favor of the plaintiff.
STURGIS, C.J., and RAWLS, J., concur.
NOTES
[1] "(4) New trials, review of order granting.  In every case in which the trial court shall enter an order granting a motion for a new trial, the trial judge shall indicate in the order granting said motion the particular ground or grounds upon which said motion was granted, and upon appeal from any such order, if taken under the statutes providing for appeal from orders granting new trials, no other grounds than those specified by the trial judge, as a basis for the order granting the new trial, shall be considered as arguable upon said appeal. As amended, Laws 1945, c. 22854, § 7." F.S. § 59.07(4), F.S.A.
[2] Fulton v. Poston Bridge & Iron, Inc., (Fla.App. 1960) 122 So.2d 240; Ebersole v. Tepperman, (Fla. 1953) 65 So.2d 564.
[3] Rule 1.38(a), Fla.Rules of Civil Procedure  1962 Revision, 30 F.S.A.
[4] Kellenberger v. Widener, (Fla.App. 1963) 159 So.2d 267.
[5] 15 Am.Jur., Damages, Sec. 347.
[6] Washington Gaslight Co. v. Lansden, 1899, 172 U.S. 534, 19 S.Ct. 296, 43 L.Ed. 543.
[7] Sauer v. Sauer, (Fla.App. 1961) 128 So.2d 761.
[8] Great Atlantic & Pacific Tea Company, Inc. v. Varner, (Fla.App. 1963) 157 So.2d 148.
[9] Lincoln Tower Corp. v. Dunhall's-Florida, Inc., (Fla. 1952) 61 So.2d 474; State ex rel. Railroad Com'rs v. Florida East Coast Ry. Co., 58 Fla. 524, 50 So. 425.
[10] Jones et al. v. Greeley, 25 Fla. 629, 6 So. 448.
[11] See cases collated in 63 A.L.R. 1405.
[12] Rule 1.35(a), Fla.Rules of Civil Procedure  1962 Revision.
[13] Winn & Lovett Grocery Co. et al. v. Archer et al., 126 Fla. 308, 171 So. 214, 221.
[14] Interstate Company et al. v. Garnett (1929) 154 Miss. 325, 122 So. 373, 756, 63 A.L.R. 1402; See cases collated 63 A.L.R. 1408  Minority Rule.