262 So.2d 258 (1972)
The RICHARDS COMPANY, Inc., Appellant,
v.
James L. HARRISON, Jr., a Minor, by His Father and Next Friend, James L. Harrison, Sr., Appellees.
No. N-295.
District Court of Appeal of Florida, First District.
May 9, 1972.
Rehearing Denied June 6, 1972.
*260 John F. Fannin, of Milan, Martin & Ade, Jacksonville, for appellant.
Charles Cook Howell, III, of Howell, Kirby, Montgomery, D'Aiuto, Dean & Hallowes, Jacksonville, for appellees.
SPECTOR, Chief Judge.
Appellant seeks reversal of a judgment entered pursuant to a jury verdict in an action by appellee, an 18-year-old minor, for damages arising out of appellant's breach of duty to furnish appellee, an employee, a reasonably safe place in which to work and, further, for damages arising out of appellant's knowingly exposing appellee to personal danger not to be expected from the nature of his employment.
The Richards Company, Inc. is an encyclopedia marketing concern with principal offices in New York City. The company does business in all fifty states. Sales are made on a door-to-door basis by salesmen employed and trained by the company for that purpose. Generally, the salesmen operated in crews of several under the supervision of a crew manager, a Mr. Zampieri in this case. Appellee was a new employee of appellant when this cause of action arose. He had received three days of intensive training in the art of selling encyclopedias door to door. On the day in question, appellee and two other young salesmen left Jacksonville about 2:30 P.M. in their crew supervisor's car and were told they were going to Valdosta, Georgia, to solicit business that evening. While enroute, they stopped to eat and appellee expressed a desire to call his father to tell him where he would be working that night, but Mr. Zampieri told him there was no time to make such a call as they were in a hurry to get to Valdosta. They arrived in Valdosta at 5:30 P.M.
At the time there was in effect a municipal ordinance prohibiting solicitation without a permit within the Valdosta city limits. Appellant was aware of the ordinance and, in fact, Mr. Zampieri was specifically instructed by his superior to arrive in Valdosta in time to register at the city clerk's office and obtain permits for the crew or, if they arrived too late to do that, to be certain that the crew worked outside the city limits where no permit was required. Having arrived at 5:30 P.M., the crew supervisor concluded it was too late to obtain the permits and so determined to work the crew outside the city. Although he was unfamiliar with the city, he dropped the crew off to begin soliciting without first obtaining a city map to verify the boundaries. Two of the crew were dropped off outside the city, but appellee was let out inside the city limits at a shopping center where he was arrested by police for soliciting without a permit and taken to jail where he spent the night after being mugged and fingerprinted. The next morning he was found guilty of violating the solicitation ordinance and fined $54.00 or thirty days in jail.
The evidence adduced at the trial related the unsuccessful efforts by appellee to obtain his release through the intercession of his father in Jacksonville, as well as those of his employer, the appellant. The father understandably relied on the appellant's representation that they would take care of the boy's release, but they failed to send the necessary funds to pay the fine *261 until the next day. Indeed, when the funds did arrive in Valdosta, appellee was then before the municipal court where his case was being considered. Thereafter, this action was instituted culminating in a jury verdict for appellees for $5,000.00 compensatory damages and $35,000.00 punitive damages.
The first point raised by appellant contends the trial judge erred in failing to charge the jury in accordance with the principles of law pertaining to defendant's duty to the plaintiff. There is no merit to this contention. Our examination of the complaint filed against appellant reveals that the gist of appellee's action against the appellant was the latter's failure to provide a reasonably safe place in which to work. Appellee also complained that the appellant knowingly exposed him to danger of arrest and incarceration not reasonably to be expected from the nature of his employment. The evidence sustained appellee's two-pronged complaint in those regards. The duty owed by an employer to his employees is generally recognized. 21 Fla.Jur., Master and Servant, Section 23, states the duty simply as follows:
"An employer holds a duty to his employees to furnish a reasonably safe place to work ..." [Citing Beebe v. Kaplan, 177 So.2d 869 (Fla.App. 1965)]
The same authority further states the general rule that the employer not only owes a duty to furnish his employee with a reasonably safe place to work, but also to exercise ordinary care and diligence to keep it safe. Our examination of the instructions given to the jury indicate that the jury was accurately and fairly instructed as to the law concerning the duty owed by appellant to appellee. The court instructed the jury as follows:
"Now, the issues in this case on the complaint of young Harrison are whether the defendant, The Richards Company, was guilty of a breach of duty owed by the defendant to the plaintiff which was the legal cause of the damage suffered by the minor plaintiff in any of the following respects: In failing to warn or instruct the plaintiff that the City of Valdosta, Georgia had a municipal ordinance requiring all solicitors to carry a permit to be issued by the Police Department of that city in order to solicit within the City limits; or, failing to provide or furnish the minor plaintiff with a reasonably safe place to work; that is, failing to provide the minor plaintiff with a permit in order to enable him to solicit sales within the City limits of Valdosta, Georgia without being subjected to arrest by local law enforcement agencies when the defendant knew or reasonably should have known that such a permit was required and knew or reasonably should have known that the area assigned to the minor plaintiff for the solicitation of sales was within the City limits of Valdosta, Georgia. And, thereafter in failing to take reasonably adequate measures to secure the prompt release of the minor plaintiff from the jail after he was incarcerated."
The above instruction to the jury is consistent with the legal duty owed by appellant to appellee as set forth by the editors of American Jurisprudence by the following language:
"It is also a universally recognized principle of the law of master and servant that under certain circumstances an affirmative duty rests on the employer to give his employees information concerning the danger or perils of their work, or in legal parlance, to `warn and instruct' employees. This duty is not an absolute one in all cases; its existence depends upon the age, understanding, and experience of the employee and also upon the character of the danger to which he is subjected.
"Comprehensively stated ... if a person employs another to do work . . *262 in a dangerous place, and the employee, because of youth, ignorance or inexperience, fails to appreciate the danger, it is a breach of duty and negligence on the part of the employer to expose him thereto ... unless the employer first gives to him such instruction, caution, and warning as will enable him to comprehend the danger and to do his work safely with the exercise of proper care on his part. The employer cannot discharge himself of this obligation by directing another person to warn and instruct his employees. He is absolutely liable if the duty has not been performed." 53 Am.Jur.2d, Master and Servant, § 164, pp. 227-228.
On the basis of the foregoing authorities as applied to the facts of this case, we hold that appellant has failed to demonstrate that the trial court committed error in connection with the jury instructions.
Appellant has also raised two points on appeal relating to the damages awarded by the jury. First, it is contended that the trial court should have granted a directed verdict in favor of the defendant on the question of punitive damages or, in the alternative, its motion for a new trial on the punitive damages issue should have been granted. In essence, appellant contends simply that the conduct of its agents did not justify the imposition of punitive damages. And, secondly, it is contended that the amounts of damages awarded are excessive as to both the compensatory damages and the punitive damages.
Exemplary or punitive damages are generally defined as damages which are given in enhancement merely of the ordinary damages when the acts complained of have been committed with malice, moral turpitude, wantonness, willfulness, outrageous aggravation, or with reckless indifference for the rights of others. Such damages go beyond the actual damages suffered in the case, and are imposed as a punishment of the defendant and as a deterrent to others. 9 Fla.Jur., Damages, Section 114. The same authority continues to set out the widely held view that "... exemplary or punitive damages are recoverable in all actions for damages based on tortious acts which involve ingredients of malice, ... or wanton and outrageous disregard of the plaintiff's rights." Ibid. § 119. Such damages are recoverable when the defendant acts willfully or with such gross negligence as to indicate a wanton disregard of the rights of others. Punitive damages need not flow from an intentional course of conduct or intent to inflict damages but may also be allowed in such cases where there is that entire want of care which would raise the presumption of a conscious indifference to the consequence of one's action or inaction. In the case at bar, the jury might well have thought that the crew chief's failure to telephone the Valdosta Police Department in an attempt to arrange for his salesmen to canvass the area or the crew chief's failure to obtain a map of the city for each of the salesmen to carry and use as a reference guide to establish the location of their canvassing activities amounted to that degree of indifference to the fate of the crew members as to justify the imposition of punitive damages. It is to be noted that malice as used in cases which allow recovery for exemplary damages does not necessarily mean anger or malevolent or vindictive feelings towards the plaintiff. A wrongful act without reasonable excuse is malicious within the legal meaning of the term. Wrains v. Rose, 175 So.2d 75 (Fla.App. 1965).
A review of the foregoing authorities and discussion convinces us that the issue of punitive damages was properly submitted to the jury for determination.
We have considered appellant's contention that the amount of damages awarded by the jury was excessive but find that contention to be without merit. The law is well settled in this jurisdiction *263 that the amount of damages to be awarded in a case such as this is primarily a matter within the sound discretion of the jury under proper instruction by the court. 9 Fla.Jur., Damages, § 96. The amount of compensatory damages awarded to appellee, $5,000.00, is well within the range of jury verdicts in analogous cases which have been upheld by the appellate courts of this state. In Joseph v. Jefferson Stores, 228 So.2d 103 (Fla.App. 1969), the court upheld a jury verdict for compensatory damages in the amount of $5,000.00 where the plaintiff had been falsely imprisoned for only two and one-half hours. Admittedly, the consequence of appellant's failure to provide appellee a safe place in which to work was significantly more severe as far as its effect on appellee is concerned.
The amount of punitive damages to be awarded is to be determined by the jury in light of all the facts of each case. 9 Fla.Jur., Damages, § 131. While it is within the province of the court to review the amount awarded after the verdict is in, the court should follow the rule of reasonableness in determining whether the amount is excessive, having due regard of course for the purposes sought to be accomplished by the imposition of punitive damages. In Levine v. Knowles, 197 So.2d 329 (Fla.App. 1967), the court said:
"Although compensatory damages are sometimes thought of as having an admonitory purpose, they can only fulfill this function when the sum required to repair the plaintiff's loss also happens to be an admonition of the proper severity. In practice, the amount of actual damages caused by the defendant may have little or no relation to the size of the money judgment which would serve as the most effective admonition in a particular case. It is more important to forestall conduct which is likely to cause serious injury than that likely to cause only inconsequential damage.
"The seriousness of the probable result of the defendant's conduct, then, is the yardstick for determining the advisability of discouraging such behavior in the future, rather than the seriousness of the damage actually caused. [Citing Hutchinson v. Lott, supra]
"The doctrine of punitive damages makes the desired admonitory function of certain tort actions more effective than it would be if money judgments were always limited to reparation. This is particularly so where either the compensatory damages are too lenient for admonitory purposes or the payment of compensatory damages only would not handicap the defendant sufficiently to discourage such conduct in the future... .
* * * * * *
"`... If there is any evidence tending to show that punitive damages could be properly inflicted, even if the court be of the opinion that the preponderance of the evidence is the other way, the court should leave the question to the jury.'" (Emphasis supplied) Citing Doral Country Club, Inc. v. Lindgren Plumbing Co., 175 So.2d 570 (Fla.App. 1965).
In Florida East Coast Railway Company v. Morgan, 213 So.2d 632 (Fla. App. 1968), the court adhered to the rule that is alluded to above holding that the fixing of the amount of punitive damages is peculiarly within the province of a jury. This court has so held in Spencer Ladd's, Inc. v. Lehman, 167 So.2d 731, reversed on other grounds, Fla.Sup., 182 So.2d 402. While a court may set aside an award for punitive damages, it will do so only in unusual circumstances.
In determining the amount of punitive or exemplary damages, the pecuniary circumstances of defendant are material and must be considered since an amount that would be pecuniary punishment to a man of small means would not necessarily serve as punishment to one of large means. Miami Beach Lerner Shops, Inc. v. Walco *264 Manufacturing of Florida, Inc., 106 So.2d 233 (Fla.App. 1958). It follows that if a punitive award is insufficient to serve as punishment, it cannot serve as a warning to deter him from committing a similar offense or engaging in similar conduct in the future. Hutchinson v. Lott, 110 So.2d 442 (Fla.App. 1959). In Lehman v. Spencer Ladd's, Inc., 182 So.2d 402, the court at page 404 held:
"... the allowance of evidence of financial worth of the tortfeasors, will make possible the attainment of the objective and purpose of punitive damages, if a defensible one remains, i.e. punishment of each wrongdoer by exacting from his pocketbook a sum of money which, according to his financial ability, will hurt, but not bankrupt."
In Hutchinson v. Lott, supra, this court held that a punitive damage award will be set aside where it is so great as to shock the judicial conscience. That view was adhered to by our sister appellate court in Atlas Properties, Inc. v. Didich, 226 So.2d 684 (Fla.Sup. 1969).
In the instant case, the evidence shows that the appellant has a net worth of $5,300,000.00. The amount of punitive damages awarded, $35,000.00, is approximately two-thirds of one percent of appellant's net worth. That amount can hardly be said to shock the conscience of this court. It obviously was the intent of the jury in arriving at its punitive award to impress upon the appellant the necessity of safeguarding the safety of its employed door-to-door solicitors, many of whom are youthful, embarking upon their first experience in the financial world. Failure to take such steps as are calculated to make such assurances can result in arrest and conviction records that can stain one's reputation for the remainder of his life.
Accordingly, the judgment reviewed herein is affirmed.
WIGGINTON and RAWLS, JJ., concur.