326 So.2d 12 (1975)
SOUTHEAST TITLE AND INSURANCE CO., Petitioner,
v.
Cindy CALDWELL et al., Respondents.
No. 43929.
Supreme Court of Florida.
April 16, 1975.
On Rehearing October 1, 1975.
Julius F. Parker, Jr. of Madigan, Parker, Gatlin, Truett & Swedmark, Tallahassee and Edna L. Caruso of Howell, Kirby, Montgomery, D'Aiuto, Dean & Hallowes, W. Palm Beach, for petitioner.
Jos. D. Farish, Jr. and F. Kendall Slinkman, III, of Farish & Farish, W. Palm Beach, for respondents.
PER CURIAM.
The petition and cross petition for writ of certiorari reflected apparent jurisdiction in this Court. We issued the writ and have heard argument of the parties. Upon further careful consideration of the matter, the briefs and record, we have determined that the cited decisions present no direct conflict as required by Article V, Section 3(b)(3), Florida Constitution (1973). Accordingly, the writ must be and is hereby discharged.
It is so ordered.
BOYD, DEKLE, OVERTON and ENGLAND, JJ., concur.
ADKINS, C.J., concurs in part and dissents in part with opinion.
ADKINS, Chief Justice (concurring in part; dissenting in part):
I concur in the discharge of the writ of certiorari issued upon the petition of Southeast Title and Insurance Co., but I dissent to that part of the decision discharging *13 the writ of certiorari issued upon the cross-petition of plaintiff Caldwell.
The question involved is whether the trial court abused its discretion in denying cross-petitioner's motion to amend her complaint just before the close of the presentation of her case to add a prayer for punitive damages.
Rule 1.190(a), R.C.P., entitled Amendments, sets the general tone of the rules when it states that leave to amend shall be given freely when justice so requires. Rule 1.190(b), R.C.P., provides, inter alia, that
"... when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they have been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend shall not affect the result of the trial of these issues."
Granting leave to amend rests in the sound discretion of the trial court, but doubts should be resolved in favor of allowing amendment until it appears that there has been an abuse of the privilege. Fouts v. Margules, 98 So.2d 394 (Fla.App.3d, 1957). This is true even though the trial judge is of the opinion that the proferred amendments will not result in the statement of a cause of action. Petterson v. Concrete Construction, Inc., 202 So.2d 191, 197 (Fla.App.4th, 1967).
While it is a general rule that cases should be tried upon the issues raised by the pleadings, amendments can be made under the rules at any time, so long as they do not prejudice the opposing party. Hart Properties, Inc. v. Slack, 145 So.2d 285 (Fla.App.3d, 1962). A litigant therefore has no right to rely upon the pleadings to the extent of believing that certain known facts will not be presented. It is only when new facts are developed under a new theory of the case that surprise can be pleaded. Hart Properties, Inc. v. Slack, supra. In Transworld Marine Corp. v. Threlkeld, 201 So.2d 614 (Fla.App.3d 1967), for example, defendants moved to amend the pleadings to conform to the evidence, pursuant to Rule 1.15(b), R.C.P., [now Rule 1.190(b)]. The motion was made after a jury verdict was rendered in favor of plaintiffs, and sought to amend the answer to include the affirmative defense of statute of frauds. The court held that even if the defense fails to appear from the pleadings, if evidence of such is admitted at trial, then the issue created will be deemed to have been raised and the pleadings may be made to conform thereto pursuant to Rule 1.15(b), R.C.P.
There is no doubt, therefore, that pleadings may be amended before, during or even after the trial. Atlantic Coastline Railroad Co. v. Edenfield, 45 So.2d 204 (Fla. 1950). Rule 1.190(e), R.C.P. The test is whether the amendment takes the opposing party by surprise. Atlantic Coastline Railroad Co. v. Edenfield, supra, at 205. Rule 1.190(b), R.C.P.
In Garrett v. Oak Hill Club, 118 So.2d 633 (Fla. 1960), for example, Mr. Justice Terrell said that amendments
"[M]ay be made to conform to the evidence as late as or after judgment or decree. This is particularly true if essential to justice or if the presentation of the merits will be more effectively expedited. It is part of what we call liberality of amendments." (p. 635)
There is also authority for the proposition that under the new pleading rules amendment may be allowed even if it changed the legal theory upon which the action was initially based. Strickland v. St. Petersburg Auto Auction, Inc., 243 So.2d 603 (Fla.App.4th, 1971). See also Raggs v. Gouse, 156 So.2d 882 (Fla.App.2d, 1963), where plaintiff, a passenger in defendant's car, sued defendant for personal injury, *14 alleging simple negligence. At the close of all the evidence, and just as the trial judge was about to enter a directed verdict for defendant, since plaintiff was subject to provisions of the Florida guest statute, plaintiff was allowed to amend his complaint to plead gross negligence. This was found to be proper under Rule 1.15(b), R.C.P. No new testimony needed to be taken and the Court's offer of a continuance was waived by the defendant.
The case sub judice was an excess judgment suit brought by cross-petitioner Caldwell against Southeast Title and Insurance Company alleging bad faith in failure to settle a law suit between the insured Caldwell and a third party. It is too well settled to require citation that the insuror must act in good faith toward the assured in its effort to negotiate a settlement. Obviously the very nature of the excess judgment suit which is grounded on bad faith gives rise to a possible recovery of punitive damages.
In order to recover punitive damages, however, more than simple bad faith must be shown. The existence of fraud, malice, gross negligence, oppression or like circumstances of aggravation are generally required. See 9A Fla.Jur., Damages, § 126, at 371. Where malice can be imputed from the defendant's entire want of care or attention to duty, or from his great indifference to the person, property or rights of the plaintiff, punitive damages are allowable; this rule is consistent with the theory that punitive damages are allowed as a deterrent to the commission of similar offenses by others. Griffith v. Shamrock Village, Inc., 94 So.2d 854 (Fla. 1957). Thus, while punitive damages need not be specially plead, the elements thereof must be stated in the complaint to the extent necessary to advise defendant that he will have to meet a demand of that kind at the trial.
Malice which permits recovery for punitive damages does not necessarily mean anger or malevolent or vindictive feelings toward the plaintiff, and a wrongful act without reasonable excuse is malicious within the legal meaning of the term. Richards Co. v. Harrison, 262 So.2d 258 (Fla.App.1st, 1972). Moreover, punitive damages need not flow from an intentional course of conduct or intent to inflict damages, but may also be allowed in such cases where there is the entire want of care which would raise the presumption of a conscious indifference to the consequences of one's actions or inaction. Richards Co. v. Harrison, supra, at 262. Thus, for example, where the defendant's crew chief failed to make arrangements with the police department to permit plaintiff's salesmen to canvass the city, knowing that a municipal ordinance required all solicitors to carry a permit, which failure resulted in the arrest and fining of the plaintiff, the Court properly submitted the issue of punitive damages to the jury. Richards Co. v. Harrison, supra, at 262. If there is any evidence tending to show that punitive damages could be properly inflicted, even if the Court be of the opinion that the preponderance of the evidence is the other way, the Court should leave the question to the jury. Doral Country Club, Inc. v. Lindgren Plumbing Co., 175 So.2d 570, 571 (Fla.App.3d, 1965).
The evidence in the case sub judice strongly supports a finding of bad faith on the part of the insurance company. There are also additional factors which could support a finding of bad faith and perhaps even malice, or at least conscious indifference to the rights of others. The events which occurred after the original trial in which the jury awarded a verdict of $205,000 for the injured party, Patricia Benson, against cross-petitioner, Cindy Caldwell, are especially revealing. The record indicates that the Caldwell's attorney offered to settle the case within the limits of the policy, originally believed to be $25,000. This offer was, of course, refused before trial, the petitioner, Southeast Title, submitting an offer of $5,000. After the verdict, however, defendant was *15 naturally faced with paying the judgment to the extent of its coverage, i.e., $25,000. However, it was learned that the actual limits were $50,000, not the $25,000 believed by Caldwell and her attorney. Defendant knew of this on the morning prior to trial.
Instead of informing the insured that the actual limits were $50,000, the defendant's agent directed its attorney, against the attorney's advice, to pay only the $25,000. A check for $25,000 was then sent to Caldwell's attorney, the check containing a release form on the back stating the acceptance of this check is a full release.
Regarding these actions by the defendant, one of the witnesses called by the cross-petitioner Caldwell, testified that
"I think at this point they reached beyond any line that could reasonably be drawn in inviting further action and exposing their client or their insured to all kinds of problems. I would have to say I am shocked by this performance... .
"Question: Sir, would you say it was even greater than bad faith? Answer: Yes, I hesitate not at all. As we sometimes think of negligence as being carelessness, act of bad judgment, omission, or failure that anyone might perform, that falls, in my opinion, into an area of deliberate behavior which either comes close or crosses the line of criminal behavior, in my opinion." Record on Appeal at p. 483.
With this in mind, then the question is whether the issue of malice, etc., was tried by the express or implied consent of the parties such as would allow an amendment at the close of the plaintiff's case.
At the close of the plaintiff Caldwell's case, counsel moved to amend to add the prayer for punitive damages. Evidence as to the same was already in the record. All that remained was to introduce evidence of defendant's financial ability. Was there unfair surprise to defendant in the petitioner's attempt to amend to such extent that defendant would have been prejudiced by the amendment? Evidence of malice was already allowed in the record without objection. The defendant had already been requested to produce a net worth statement putting defendant on notice to be ready to testify as to its net worth; for what possible purpose other than for punitive damages?
Granted, plaintiff had time prior to the motion to amend that counsel could have amended the complaint. But the fact remains that the only issue in the case was bad faith on the part of the defendant. The punitive damage issue did not raise any new or unrelated question for either party to prepare for. Nor did it appear that the amendment would change or introduce new issues or materially vary the grounds for relief or delay the suit necessarily by requiring a continuance under circumstances which would be unduly prejudicial to the opposing party. Brown v. Montgomery Ward & Co., 252 So.2d 817 (Fla.App.1st, 1971).
The proof of malice required for recovery of punitive damages is but one step forward in the proof of bad faith. The defendant would almost be required to prepare for such issues in the defense of the excess judgment suit. In fact, this is precisely how the evidence of malice came into the record, as part of the plaintiff's effort to establish bad faith to the degree required to get past a directed verdict. Moreover, even when the evidence came in without objection, apparently the defendant made no attempt to refute it. Additionally, cases are numerous where the opposing party was granted a continuance to avoid any possible prejudice in situations like these.
Judicial discretion has been defined as
"... A discretion exercised within the limits of the applicable principles of law and equity, and the exercise of which, if clearly arbitrary, unreasonable, or unjust, when tested in light of such *16 principles, amounting to an abuse of such discretion, may be set aside on appeal." Carolina Portland Cement v. Baumgartner, 99 Fla. 987, 128 So. 241, 247 (1930).
Moreover,
"Although the appellant is not required to show that the trial court acted willfully, the cases reflect that the trial court's action must plainly appear to have been in effect the imposition of an injustice .. . or that the ruling was erroneous and may well have affected a decision of the jury... ." 2 Fla.Jur., Appeals, § 328, Note 13, at 696.
This case is different from Wooten v. Wooten, 213 So.2d 292 (Fla.App.3d, 1968), and Triax, Inc., v. City of Treasure Island, 208 So.2d 669 (Fla.App.2d, 1968), where the denials of motions to amend to conform to the evidence were found not to have been abuses of discretion. In Wooten, the Court denied husband's motion to amend his complaint to include adultery when he did not make the motion until the conclusion of his case, but knew of the allegedly adulterous behavior prior to filing his complaint and had introduced evidence of it in support of his allegation of extreme mental cruelty.
In Triax, the denial of the motion was proper where there was nothing in the record from which it could be inferred that a quantum meruit issue had been tried by express or implied consent of the parties. The motion was made seven days after the trial judge had entered judgment for defendant in an action for breach of an oral contract.
Contrarily, in the case sub judice, the issues involved in the punitive damage question are so closley related to those in the excess judgment question as to require little or no extra preparation. The defense of adultery in Wooten certainly required a wholly different preparation than did mental cruelty. Moreover, a motion to amend seven days after judgment and on an issue not raised in the record as in Triax, is quite different from a motion made before the close of plaintiff's case and where there is support in the record.
I would quash that portion of the decision of the District Court of Appeal which affirmed the trial court's denial of plaintiff's motion to amend and remand the cause for further proceedings.

ON REHEARING GRANTED
PER CURIAM
This cause was previously submitted to the Court on petition for writ of certiorari and cross-petition for writ of certiorai. These petitions ware denied after rehearing was granted, with Adkins, C.J., concurring in part and dissenting in part.
We granted a second rehearing in this cause.
Petitioner and cross-petitioners have sought to establish conflict certiorari from a per curiam without opinion decision of the Fourth District Court of Appeal. We have determined that there is no direct conflict as required by Article V, Section 3(b)(3), Florida Constitution, and we adhere to the original order of this Court in this cause denying petition for writ of certiorari and cross-petition for writ of certiorari.
Our review of the record, however, compels us to suggest that the Insurance Commissioner review this cause pertaining to the actions of Southeast Title and Insurance Company in representing its insured.
The writ is hereby discharged.
It is so ordered.
OVERTON, ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
ADKINS, C.J., concurs in part and dissents in part in accordance with his opinion filed herein on April 16, 1975.