409 So.2d 75 (1982)
ST. REGIS PAPER COMPANY, Appellant/Cross Appellee,
v.
J.B. WATSON, Sr., Appellee/Cross Appellant.
No. MM-51.
District Court of Appeal of Florida, First District.
January 14, 1982.
Rehearing Denied February 25, 1982.
*76 William G. Cooper, of Kent, Watts, Durden, Kent & Mickler, Jacksonville, for appellant/cross appellee.
Mitzie Cockrell Austin, of Scruggs, Carmichael, Long, Tomlinson, Roscow, Pridgeon, Helpling & Austin, Gainesville, for appellee/cross appellant.
SHIVERS, Judge.
Appellant St. Regis Paper Company (St. Regis) appeals the granting of a new trial on inadequate punitive damages to Estate of J.B. Watson, Sr. (Watson). Mr. Watson died after institution of the suit.
Watson, a retired farmer, employed Hudson as professional consulting forester to represent his interests in selling all of his planted pine timber located on approximately 180 acres of land in Levy County. Hudson contacted St. Regis which then had two of its foresters perform a timber cruise on Watson's timber to ascertain the quantity.
St. Regis informed Hudson it would purchase Watson's timber for $57,500 based on its "timber cruise" showing 2300 cords of timber at $25.00 per cord. But thereafter, a written contract was entered into between St. Regis and Watson whereby Watson agreed to sell all of the timber on his land for $52,900. According to the terms of the contract the purchase price was to be paid in two payments, $29,900 on or about the date of the contract (February 1976) and $23,000 on January 2, 1977.
Watson maintained that at the time of the above contract, Hudson was also acting as an agent for St. Regis and was to receive additional compensation from St. Regis. Watson asserted that the contract price of $52,900 was not the fair market value of the timber at the time of sale to St. Regis and both St. Regis and Hudson knew this. Watson claimed that Hudson, as an undisclosed agent of St. Regis, represented to him that $52,900 was the fair value of his timber; that Watson relied on the advice of Hudson; and that as a result, he was wrongfully deprived of his property.
The trial court submitted to the jury a special verdict consisting of two issues. On Watson's allegation that St. Regis intentionally, willfully and maliciously deprived him of the fair market value of his property (the first issue before the jury) Watson sought compensatory and punitive damages. The compensatory damages claimed amounted to the difference between the contract amount of $52,900 and the actual fair market value. St. Regis admitted at trial that it, in fact, had cut 3,317.45 cords or $82,911.25 worth of Watson's timber as compared to the 2300 cords or $52,900 that it had contracted to purchase. It confessed judgment as to its liability for compensatory damages.
The second issue before the jury was whether the payment to Hudson of the contract's $23,000 final installment constituted delivery of said sum to Watson (who never received it).
The initial payments consisted of checks to J.B. Watson, Sr., for $23,000; to J.B. Watson for $3,726 for "reforestation"; to Hudson for $3,174 for a 6% brokerage fee, totaling $29,900, plus a $4,600 "finder's fee" payment to Hudson. The final payment of $23,000 due January 2, 1977, was in dispute.
The material parts of the jury's special verdict read:
Issue # 1
(X) We find for the Plaintiff, The Estate of J.B. WATSON, SR. on the issue of fraud and deceit, and assess compensatory damages of $30,011.25, and assess punitive damages of $5,585.25 against Defendant, ST. REGIS PAPER COMPANY.
Issue # 2
(X) We, the jury, find for the Defendant, ST. REGIS PAPER COMPANY, on the issue of delivery of the final payment of $23,000.00.
*77 Subsequently, Watson filed a motion for new trial asserting the damages were grossly inadequate. The trial court granted Watson a new trial as to the amount of punitive damages which St. Regis has appealed. Watson asserts the trial court erred in failing to grant him a directed verdict on the alleged failure of St. Regis to make the final payment of $23,000 to him.
We affirm.
St. Regis contends its employees made mistakes in mathematically calculating the cordage at the time its timber cruise was conducted. While a fraud may have existed, St. Regis argues, the degree was not extreme based on the facts and circumstances presented. We must reject this argument. Deceit or actual fraud differ from mistake or negligence. They differ with respect to the necessary state of mind of the one sought to be held accountable. Watson v. Jones, 41 Fla. 241, 25 So. 678 (1899).
Although there is substantial competent evidence which would support an opposite finding, the jury found St. Regis guilty of fraud and deceit. There is substantial competent evidence to support this finding and to support the trial court's order granting a new trial on the basis of inadequate punitive damages. As a general rule, a trial court's decision on a motion for new trial is clothed with a presumption of correctness and will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. Morin v. Halpern, 139 So.2d 495 (Fla. 2d DCA 1962). A stronger showing of an abuse of discretion is required to reverse the trial judge when he has granted a motion for new trial than when he has denied one. Givens v. Lederle, 556 F.2d 1341 (5th Cir.1977).
Watson presented evidence that St. Regis paid $4,600 to Hudson, the forester, whom Watson had employed to obtain a sale of his timber. St. Regis obtained roughly $80,000 worth of timber for $50,000, and it knew that Watson was paying Hudson for his work in effecting the sale. St. Regis also knew that the written contract contained no reference to the payment to Hudson. The evidence disclosed that no employee of St. Regis had informed Watson of the payment St. Regis made to Hudson.
Because of the foregoing factors, we conclude that the trial court did not err in granting a new trial as to the amount of punitive damages. Exemplary or punitive damages are allowed and awarded as a punishment to the defendant and as a warning and example to deter it and others from committing similar offenses in the future. Richards Co. v. Harrison, 262 So.2d 258 (Fla. 1st DCA 1972).
In that case we held that:
In determining the amount of punitive or exemplary damages, the pecuniary circumstances of defendant are material and must be considered since an amount that would be pecuniary punishment to a man of small means would not necessarily serve as punishment to one of large means. Miami Beach Lerner Shops, Inc. v. Walco Manufacturing of Florida, Inc., 106 So.2d 233 (Fla.App. 1958). It follows that if a punitive award is insufficient to serve as punishment, it cannot serve as a warning to deter him from committing a similar offense or engaging in similar conduct in the future. Hutchinson v. Lott, 110 So.2d 442 (Fla.App. 1959). In Lehman v. Spencer Ladd's, Inc., 182 So.2d 402, the court at page 404 held:
"... the allowance of evidence of financial worth of the tortfeasors, will make possible the attainment of the objective and purpose of punitive damages, if a defensible one remains, i.e. punishment of each wrongdoer by exacting from his pocketbook a sum of money which, according to his financial ability, will hurt, but not bankrupt."
Richards Co., supra, at 263-264.
The trial court correctly admitted evidence of the financial resources of the defendant. This properly gave the trial judge a standard in determining whether the award of punitive damages is "either inadequate or excessive." See, Spencer Ladd's, Inc., v. Lehman, 167 So.2d 731 (Fla. 1st DCA 1964). The evidence revealed St. *78 Regis' stipulated net worth to be one billion dollars.
St. Regis has not sustained its burden of showing that the lower court abused its discretion in determining that a $5,585.25 punitive damages award is an insufficient deterrence to such continued acts by St. Regis.
Consequently, we are unable to say that the trial court abused its discretion in granting a new trial. When the amount of a verdict is so inadequate as to shock the judicial conscience a new trial should be granted. See, DeVane v. Bauman, 90 So. 192 (Fla. 1921).
On the other issue, Watson contends St. Regis failed to introduce any evidence to show that the forester Hudson had the apparent authority to collect the final payment of $23,000 to Watson, and that Watson is not bound by payment to Hudson.
There is substantial competent evidence for the jury's finding that St. Regis discharged its obligation on the final payment due under the contract of $23,000. The jury could have concluded that St. Regis was directed by Watson to follow Hudson's instructions as to payment by letter, that the letter was an express holding out to St. Regis of Hudson's authority to collect the payment.
Further, Watson should not complain of faulty instructions to which he did not object in the trial court.
The cause is remanded for new trial as to the issue of assessment of punitive damages alone.
AFFIRMED.
ERVIN and LARRY G. SMITH, JJ., concur.