428 So.2d 243 (1983)
ST. REGIS PAPER COMPANY, Petitioner,
v.
J.B. WATSON, Sr., Respondent.
No. 61873.
Supreme Court of Florida.
March 3, 1983.
*244 William L. Durden, William G. Cooper and John F. MacLennan of Kent, Watts, Durden, Kent & Mickler, Jacksonville, for petitioner.
Mitzi Cockrell Austin of Scruggs & Carmichael, Gainesville, for respondent.
OVERTON, Justice.
This is a petition to review the decision of the First District Court of Appeal reported as St. Regis Paper Co. v. Watson, 409 So.2d 75 (Fla. 1st DCA 1982), which we find directly conflicts with our decision in Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
We find that the trial judge failed to properly articulate his reasons for granting a new trial, as required by Wackenhut, and, further, that, absent a finding that the jury was improperly influenced or that some fraud contaminated the verdict, the trial judge had no authority to grant a new trial on the grounds of inadequate punitive damages.
*245 The facts reflect that the respondent, J.B. Watson, Sr., employed a forester, John Hudson, to represent his interests in the sale of timber. Hudson contacted St. Regis, whose foresters performed a timber cruise and ascertained that 2300 cords of timber could be taken from Watson's land. St. Regis advised Hudson that it would purchase Watson's timber for $57,500, based on the price of $25 per cord. St. Regis and Watson entered into a contract in which Watson agreed to sell all the timber on his land for $52,900, payable in two installments, $29,900 in February, 1976, and $23,000 on January 2, 1977.
St. Regis paid the $29,900 installment with a check payable to Mr. Watson in the amount of $3,726 for reforestation, a check to Mr. Hudson in the amount of $3,174, representing the six percent brokerage fee owed Hudson by Watson, and a check to Mr. Watson in the amount of $23,000. The company also paid John Hudson the sum of $4,600 as a finder's fee. The final $23,000 installment was paid with a check made payable to John Hudson as Mr. Watson's escrow agent. The check was delivered to Hudson prior to January, 1977, and brought the total amount paid, including the finder's fee, to $57,500.
Watson brought suit against St. Regis, alleging in count one that St. Regis had intentionally, willfully, and maliciously deprived him of the fair value of his property, that the price on the face of the written contract was not the fair market value at the time of the sale, and that Hudson was an undisclosed agent of St. Regis. In count two, Watson sought equitable reformation of the contract so that it would reflect the fair market value of the timber. In count three, Watson alleged a breach of the contract and sought damages in the amount of $23,000 because the final payment on the contract had not been delivered to him by Hudson.
St. Regis confessed judgment as to the value of the timber, agreeing that the timber actually severed was valued at $82,911.25, calculated by the actual cut of 3,316.45 cords at $25 per cord. There was no dispute that Hudson had received a finder's fee from St. Regis in the amount of $4,600 and a brokerage commission of $3,174 from Watson. The parties agreed that Watson was entitled to compensatory damages in the amount of $30,011.25 because of St. Regis's fraud and deceit. The single issue submitted to the jury on the first count was whether punitive damages should be awarded against St. Regis. On this first issue, the jury awarded punitive damages to Watson in the amount of $5,585.25. The second issue concerned whether St. Regis had properly delivered Watson's final check for $23,000. On this issue the jury found for St. Regis.[1]
Watson filed a motion for a new trial on the grounds that: (1) there existed an irreconcilable and material inconsistency between the verdicts entered by the jury; (2) the verdict was against the manifest weight of the evidence; (3) in reaching the verdict it appeared the jury may reasonably have been misled or confused by the charge or instruction; and (4) in reaching the verdict the jury misconceived the law or evidence *246 or did not consider all elements of damage and as a result awarded grossly inadequate damages. No specific allegations were made in the motion to support these conclusory grounds.
The trial judge entered an order granting a new trial in which he stated that the uncontroverted evidence established that St. Regis had a net worth of one billion dollars and that, therefore, $5,585.25 in punitive damages was "grossly inadequate." In his order, the judge articulated in general terms the reasons for this conclusion, stating that
the jury either considered matters outside the record, misconceived the law or evidence, or did not properly consider all the elements of damage in arriving at its verdict regarding punitive damages, as the amount of such verdict is against the manifest weight of the evidence and is grossly inadequate.
St. Regis took an appeal to the First District Court of Appeal. While the appeal was pending, the district court, on motion of respondent Watson, remanded the cause for determination of whether a jury interview should be conducted. This action was precipitated by the sworn statement of Watson's counsel alleging that he had uncovered evidence of jury misconduct in an oral communication with one of the jurors. The district court ordered a post-trial jury interview by a master appointed for that purpose. The special master, in a report approved by a trial judge, found:
That the conduct of each and every juror during the deliberations was proper and correct. The conduct of a juror, or jurors, did not cause a verdict for the defendant and against the plaintiff on one count of the complaint, nor did the conduct of a juror, or jurors, cause the amount of punative [sic] damages to be lower than the majority of jurors wanted.
... Each and every juror, and the jury as a whole, during their deliberations as jurors, acted in an exemplary manner and carried out their duties as such jurors as required by law.
The district court proceeded to hear the cause on appeal, and in affirming the trial court's action in granting a new trial, held that the evidence of the financial resources of the defendant "properly gave the trial judge a standard in determining whether the award of punitive damages is `either inadequate or excessive.'" St. Regis Paper Co., 409 So.2d at 77 (citing Spencer Ladd's, Inc., v. Lehman, 167 So.2d 731 (Fla. 1st DCA 1964)). The court concluded by finding that St. Regis had not sustained its burden of showing that the lower court abused its discretion in granting a new trial.
We find that the trial judge's order was defective on its face. The trial judge supported his order with only legal reasoning and general conclusions which are not sufficient to meet the standards set out in Wackenhut. Wackenhut mandates that a trial judge granting a new trial must give specific reasons to support the conclusion that either "the verdict is against the manifest weight of the evidence or was influenced by considerations outside the record." 359 So.2d at 435. The majority in Wackenhut believed that these reasons must be included in the order granting a new trial "so that appellate courts may be able to fulfill their duty of review by determining whether judicial discretion has been abused." Id.
In the instant case, the trial judge's order rested solely on his determination that since the defendant had a large net worth, the punitive damages award should have been proportionately large. This determination is not sufficient, by itself, to show that the verdict was against the manifest weight of the evidence. The jury's major duty in determining the amount of punitive damages is to assess the appropriate degree of punishment to be imposed on the defendant commensurate with the enormity of the offense; the defendant's financial position is only one factor to be considered by the jury. Rinaldi v. Aaron, 314 So.2d 762 (Fla. 1975); Lehman v. Spencer Ladd's, Inc., 182 So.2d 402 (Fla. 1965); Fla.Std. Jury Instr. (Civ.) 6.12. Other factors which the jury may consider include *247 "the nature, extent, and enormity of the wrong, the intent of the party committing it and all circumstances attending the particular incident, as well as any mitigating circumstances." Rinaldi, 314 So.2d at 763.
In addition, the trial judge did not give any explanation for his conclusion that the jury considered matters outside the record. The record in this case clearly indicates a contrary conclusion. Indeed, the unrefuted supplemental special master's report found that the jury acted properly in all respects and was not influenced by matters outside the record.
Not only did the trial judge fail to articulate his reasons for granting a new trial, as required by Wackenhut, he had no authority under the circumstances of this case to grant a new trial because of an inadequate punitive damages verdict. It is well settled that a new trial may be ordered when the court properly concludes that unusual circumstances render a punitive damages award excessive. Arab Termite and Pest Control of Florida, Inc. v. Jenkins, 409 So.2d 1039 (Fla. 1982); Wackenhut. On the other hand, there is no authority allowing the granting of a new trial solely on the ground of inadequacy of punitive damages. The only cases directly ruling on this question are Wangen v. Ford Motor Co., 97 Wis.2d 260, 294 N.W.2d 437 (1980), and Louisville & Nashville Railroad v. Street, 164 Ala. 155, 51 So. 306 (1910). Both cases hold that there is no right to a new trial on this ground.[2]
We note that the recognized rule allows a plaintiff to challenge as inadequate a compensatory damages award. At first glance, it seems unfair that a plaintiff cannot likewise challenge as inadequate a punitive damages award. To understand the differing treatment, it is necessary to distinguish between compensatory and punitive damages. Compensatory damages, as the words indicate, are awarded to compensate an injured person for the acts of the wrongdoer, and once liability is established, an injured person is entitled as a matter of right to compensatory damages. Fisher v. City of Miami, 172 So.2d 455 (Fla. 1965). The trial court may find that an award is inadequate to fully compensate the plaintiff and may order a new trial on this basis. Roberts v. Bushore, 182 So.2d 401 (Fla. 1966); Radiant Oil Co. v. Herring, 146 Fla. 154, 200 So. 376 (1941).
In contrast, a plaintiff has no right to punitive damages. Fisher; Florida East Coast Railroad v. McRoberts, 111 Fla. 278, 149 So. 631 (1933). Punitive damages are awarded to punish the wrongdoer and to deter the commission of similar acts in the future. Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981); Wackenhut; Campbell v. Government Employees Insurance Co., 306 So.2d 525 (Fla. 1974). Once the plaintiff has introduced evidence to establish a basis for recovery, the jury, acting on behalf of the public, has the responsibility to determine whether to award punitive damages and, if so, what amount would best serve the public policy of punishment and deterrence. Wackenhut; Wangen; Louisville & Nashville Railroad. As counsel for respondent conceded in oral argument, a jury may decide not to award punitive damages even though the evidence would support such an award, Wackenhut, and the plaintiff would have no recourse unless he could prove fraud or an improperly influenced jury. In such a situation, the plaintiff must accept the jury verdict since it is not appealable. Wangen. It necessarily follows that, if the jury may choose to award no punitive damages, it may also choose to award as small an amount as it deems appropriate to meet the goals of punishment and deterrence.
Our holding in this case might seem inconsistent with the rule allowing a defendant to challenge a punitive damages award as excessive. On close examination, however, the holding logically derives from *248 the dual purposes of punishment and deterrence underlying punitive damages. While a plaintiff has no right to receive any punitive damages, once the jury decides to award such damages, the award must not bankrupt the defendant, Lehman v. Spencer Ladd's, Inc., and must be proportionate to the magnitude of the wrong committed. Wangen. A defendant does have a right to be free from unreasonable punishment inflicted by an excessive punitive damages award. Louisville & Nashville Railroad.
We hold that a trial judge has no authority to order a new trial solely because, in his view, the punitive damages awarded by the jury were inadequate in comparison to the defendant's net worth. We recognize, however, that a new trial may be ordered if the trial judge finds that the jury awarded an unreasonably small amount of punitive damages because the jury was improperly influenced or because some fraud contaminated the jury verdict. Lassitter v. International Union of Operating Engineers, 349 So.2d 622, 627 (Fla. 1977). The order so holding must, of course, comply with the requirements of Wackenhut.
For the reasons expressed, we disapprove the decision of the district court and remand with directions for reinstatement of a judgment based upon the jury verdict.
It is so ordered.
ALDERMAN, C.J., and BOYD, McDONALD and EHRLICH, JJ., concur.
ADKINS, J., dissents with an opinion.
ADKINS, Justice, dissenting.
I dissent.
The majority opinion unfairly relies upon a small excerpt from the order granting a new trial, and ignores the balance of the order. The trial judge made the following findings:
1. The law on the issue of punitive damages as set forth in the case of Richards Company v. Harrison, 262 So.2d 258 (1st DCA Fla. 1972) is appropriate and applicable to the disposition of the Motion now under consideration in the case at bar.
2. Richards Company and other cases as related to the issue in this case stand for the principle that the award of punitive damages is primarily a matter within the sound discretion of the jury in light of all the facts in the case giving due regard, of course, for the purposes sought to be accomplished by the imposition of punitive damages.
3. The rule of law setting forth the basis for the application of punitive damages, which applies in this case, is quoted as follows in Richards Company:

"Although compensatory damages are sometimes thought of as having an admonitory purpose, they can only fulfill this function when the sum required to repair the plaintiff's loss also happens to be an admonition of the proper severity. In practice, the amount of actual damages caused by the defendant may have little or no relation to the size of the money judgment which would serve as the most effective admonition in a particular case. It is more important to forestall conduct which is likely to cause serious injury than that likely to cause only inconsequential damage.
"The seriousness of the probable result of the defendant's conduct, then, is the yardstick for determining the advisability of discouraging such behavior in the future, ...
"The doctrine of punitive damages makes the desired admonitory function of certain tort actions more effective than it would be if money judgments were always limited to reparation. This is particularly so where either the compensatory damages are too lenient for admonitory purposes or the payment of compensatory damages only would not handicap the defendant sufficiently to discourage such conduct in the future, ..."
4. The court, in Richards Company, also cited Spencer Ladd's Inc. v. Lehman, 167 So.2d 731 (1st DCA Fla. 1972), for the proposition that even though:

*249 "... the fixing of the amount of punitive damages is peculiarly within the province of a jury (citation omitted) ... a court may set aside an award for punitive damages ... in unusual circumstances."
5. In Spencer Ladd's Inc., at 738, the province of the jury was clarified:
"To leave the amount of damages to be awarded by the jury entirely to speculation and conjecture is contrary to well-settled principles of law, and will result most frequently in an injustice either to the plaintiff or to the defendant. Furthermore, after a verdict awarding punitive damages under the majority rule has been rendered and is objected to by either party on the ground that the award of punitive damages is either inadequate or excessive, what standard may the trial judge use in reaching a determination as to whether such a verdict should be affirmed or set aside?"
6. Judge Spector goes on in his text and indicates that in determining the amount of punitive or exemplary damages, the pecuniary circumstances of the defendant are material and must be considered, since an amount that would be pecuniary punishment to a man of small means would not necessarily serve a punishment to one of large means. Spector continues on to provide that it follows that if a punitive award is insufficient to serve as punishment, it cannot serve as a warning to deter him, in the context meaning the defendant, from committing a similar offense or engaging in similar conduct in the future. Quoting other cases he continues:
"... the allowance of evidence of financial worth..., will make possible the attainment of the objective and purpose of punitive damages, ..., i.e. punishment of each wrongdoer by exacting from his pocketbook a sum of money which, according to his financial ability, will hurt, but not bankrupt."
7. I read Richards and the other cases to indicate that the awarding of punitive damages is within the province of the jury, that a punitive damage awards will not be set aside as excessive unless it shocks the judicial conscience. Further, that an award of punitive damages that is similarly less than is necessary to serve as a warning to deter the defendant from similar conduct which is grossly inexcessive to the extent that it shocks the judicial conscience should also be set aside.
8. In Richards Company, the defendant had a net worth of $5,300,000.00 and the amount of punitive damages awarded for the acts of the defendant equalled about two-thirds (2/3) of one percent (1%) of that net worth. Judge Spector stated:
"That amount can hardly be said to shock the conscience of this court."
9. In the context of the St. Regis case we are dealing with a corporate defendant which stipulated net worth by virtue of the exhibit in evidence, which was the consolidated balance sheet and financial report, of approximately one billion dollars. The award of punitive damages in this case was $5,585.25, an amount which is grossly inadequate under the facts and circumstances of this case.
10. From the amount of the award of punitive damages  $5,585.25 in the context of the evidence adduced at the trial of this case, it is apparent that the jury either considered matters outside the record, misconceived the law or the evidence, or did not properly consider all the elements of damage in arriving at its verdict regarding punitive damages, as the amount of such verdict is against the manifest weight of the evidence and is grossly inadequate. There is no evidence, in the record, from which a jury could reasonably infer that such an award was adequate to punish the defendant for its actions or to deter the defendant or to serve as notice to deter others from conducting themselves in a similar manner in the future.
11. If I had the authority after a jury trial to award punitive damages, I would do so in the amount of two-thirds (2/3) of one percent (1%) of the net worth of the defendant, based on the facts and circumstances of this case, as contained in the *250 evidence. However, since I am of the opinion that the Court cannot substitute its judgment for that of a jury, even though the amount of such jury's verdict is erroneous and against the manifest weight of the evidence, it will be necessary to reconvene a jury for trial on the issue of punitive damages alone.
Upon appeal the entire order was considered and the appellate court said:
The trial court correctly admitted evidence of the financial resources of the defendant. This properly gave the trial judge a standard in determining whether the award of punitive damages is "either inadequate or excessive." See Spencer Ladd's Inc., v. Lehman, 167 So.2d 731 (Fla. 1st DCA 1964). The evidence revealed St. Regis' stipulated net worth to be one billion dollars.
St. Regis has not sustained its burden of showing that the lower court abused its discretion in determining that a $5,585.25 punitive damages award is an insufficient deterrence to such continued acts by St. Regis.
St. Regis Paper Co. v. Watson, 409 So.2d 75, 77-78 (Fla. 1st DCA 1982).
This follows our reasoning and holding concerning adequacy of punitive damages in Lassitter v. International Union of Operating Engineers, 349 So.2d 622 (Fla. 1976), where we said:
Although the verdict may be for considerably more or less than in the judgment of the court it ought to have been, still the court should decline to interfere, unless the amount is so great or small as to indicate that the jury must have found it while under the influence of passion, prejudice, or gross mistake. In order to shock the sense of justice of the judicial mind the verdict must be so excessive or so inadequate so as at least to imply an inference that the verdict evinces or carries an implication of passion or prejudice, corruption, partiality, improper influences, or the like. See Damage Verdicts by Parmele, Vol. 1, § 1 (1972).
349 So.2d at 627 (emphasis supplied).
The size of the punitive damages awarded, when considered in connection with the assets of the defendant, certainly carried implication of passion or prejudice, corruption, partiality, improper influences, or the like. It is ridiculous to say that such a verdict would be upheld just because the jurors denied that any improper influences existed. By his order the trial judge has shown that he observed the witnesses, considered the facts, and weighed the law. The district court was correct in affirming the judgment of the trial judge.
NOTES
[1] The special verdict form rendered by the jury is as follows:

SPECIAL VERDICT
We, the jury, find as follows:
Issue # 1
(X) We find for the Plaintiff, The Estate of J.B. WATSON, SR. on the issue of fraud and deceit, and assess compensatory damages of $30,011.25, and assess punitive damages of $5,585.25 against Defendant, ST. REGIS PAPER COMPANY.
OR
() We find for the Defendant, ST. REGIS PAPER COMPANY, on the issue of fraud and deceit. We award the Estate of J.B. WATSON, SR., the amount of $30,011.25, as compensatory damages for the difference in the fair market value of the timber cut.
Issue # 2
() We, the jury, find for the Plaintiff, the Estate of J.B. WATSON, SR., on the issue of delivery of the final payment under the contract and assess damages against the Defendant, ST. REGIS PAPER COMPANY, in the amount of $23,000.00.
OR
(X) We, the jury, find for the Defendant, ST. REGIS PAPER COMPANY, on the issue of delivery of the final payment of $23,000.00.
[2] For a general discussion of this topic, see Ghiardi, Punitive Damages in Wisconsin, 60 Marq.L.Rev. 753 (1977).