OSTERHAUS, J.
In this Engle-related case, Philip Morris USA appeals an order granting a new trial on Appellee’s non-economic and punitive damages.[1] We affirm the trial court’s order granting a new trial as to the non-economic damages, but reverse the grant of a new trial on the punitive damages.
I.
The estate and survivors of Norman Lamar Danielson won a jury verdict in a wrongful death lawsuit against the Appellant cigarette company after a three-week trial. But the jury awarded Mr. Daniel-son’s wife Micah Danielson and his children much less than they • expected. It awarded Ms. Danielson $25,000 in economic damages, $0 for pain and suffering, and $325,000 in punitive damages. It awarded Mr. Danielson’s three children $100,000 each for pain and suffering. After the trial, Ms. Danielson moved to modify the verdict for economic damages because the verdict did not honor a stipulation by the parties on economic damages. They had stipulated to $2.3 million in economic damages, which the jury should have accepted. Appellant didn’t oppose Appellee’s request to conform the economic damages verdict to the stipulation. But it did oppose Appellee’s other motion for additur on the non-economic and punitive damages, or alternatively for a new trial. After a hearing, the court entered an order conforming the economic damages to the stipulation and granting a new trial on non-economic and punitive damages. Appellant then appealed the new trial order.
II.
We review new trial orders for abu'se of discretion, with a stronger showing required to reverse an order granting a-new trial than for one denying a new trial. Scott v. Sims, 874 So.2d 21, 22 (Fla. 1st DCA 2004). A trial court has broad discretion in ruling on a motion for new trial. Brown v. Estate of Stuckey, 749 So.2d 490, 494 (Fla. 1999). The trial judge “ ‘is better positioned than any other one person fully to comprehend the processes by which the ultimate decision of the triers of fact, the jurors, is reached.’ ” Id. at 496 (quoting Cloud v. Fallis, 110 So.2d 669, 673 (Fla. 1959)). However, a trial judge may not substitute his view of the facts for those of the jury. Taylor v. Ganas, 443 So.2d 251, 253 (Fla. 1st DCA 1983). A trial court abuses its discretion where the evidence does not support the court’s conclusion, or where the trial court’s determina *294 tion rests on an incorrect conclusion of law. Schmidt v. Van, 65 So.3d 1105, 1108 (Fla. 1st DCA 2011) (quashed on other grounds by Van v. Schmidt, 122 So.3d 243 (Fla. 2013)).
A. New Trial on Non-Economic Damages
A trial court may grant a new trial if the verdict is excessive or inadequate, against the manifest weight of the evidence, or both. Estate of Stuckey, 749 So.2d at 498. An excessive or inadequate verdict is one that shocks the judicial conscience, or that has been unduly influenced by the jury’s passion or prejudice. Taylor, 443 So.2d at 253.
The trial court granted a new trial on non-economic damages because it found the jury’s verdict both inadequate and against the manifest weight of the evidence. We see no abuse of discretion here. The record supports the trial court’s conclusion in a few different ways. First, the parties stipulated to a $2.3 million amount of economic damages, which.should have been reflected in the jury’s verdict. But instead the jury awarded only $25,000. With the parties’ approval, the court adjusted the verdict higher to the stipulated level of economic damages. In the court’s view, the jury’s misstep on the form and other incidents at trial (discussed further below), demonstrated improper prejudice on the jury’s part against Ms. Danielson and the surviving children that unduly affected the compensatory damage awards. Something similar occurred with respect to the non-economic damages. Defense counsel acknowledged at closing that it would bp reasonable to award $250,000-$300,000 each for Ms. Danielson and her children, but the jury returned a verdict of $0 for Ms. Danielson and $100,000 for each surviving child. Defense counsel’s suggestion, “while certainly not binding upon the jury or the trial court, nonetheless represents the reasoned analysis of trial counsel as to a conservative figure of damages that would be supported by the evidence in this case.” Dyes v. Spick, 606 So.2d 700, 702 (Fla. 1st DCA 1992). Cf. R.J. Reynolds Tobacco Co. v. Webb, 93 So.3d 331, 339 (Fla. 1st DCA 2012) (“Although not determinative, the fact that the jury awarded double the amount of compensatory damages requested by [plaintiffs] counsel ... suggests the jury was influenced by prejudice or passion.”).
Second, the trial court expressed concern that the jury framed certain questions in a way the court perceived to be unduly hostile toward Ms. Danielson. For example, the jury asked whether her monetary damages could be given to smoking cessation clinics and cancer research, instead of to her. The court attributed the .jury’s prejudice to the Appellant’s arguments at trial. The court believed that Appellant’s arguments implied that Ms. Danielson, who had a medical background, should be faulted for her husband’s smoking; that she did not care enough about her husband to explain the dangers of smoking to him; that she should bear some fault for the decedent’s continued smoking; and that she sought to cash in on his death. The court pointed, for instance, to Appellant’s counsel’s opening statement highlighting that Ms. Danielson was relieved by her husband’s decision to resume smoking after trying to quit. These arguments, combined with the fact that the record did not demonstrate any strain or hostility in the Danielsons’ marriage or parent-child relationships, lend credence to the court’s finding that the jury’s verdict was the product of adverse passion and prejudice directed against Ms. Danielson. Although we recognize that the jury’s award to each child wasn’t insubstantial, we cannot conclude that the trial court *295 abused its discretion by granting a new trial on the non-economic- damages. See e.g., Miami Dade Cnty. v. Merker, 907 So.2d 1213 (Fla. 3d DCA 2005). (affirming order granting new trial in wrongful death suit where evidence of love and affection between the plaintiff and the deceased was undisputed),
B. New Trial on Punitive Damages
After granting a new trial on the non-economic damages, the trial court’s order concluded that a new trial was required on the $325,000 punitive damages award “[b]ecause the law requires that an award of punitive damages must bear- a reasonable relationship- to the award of compensatory damages.” The order concluded that the punitive damages must be retried because the economic damages award increased and the non-economic damages weren’t yet final, as well as because the jury had “awarded punitive damages .on .a 1:1 ratio with the compensatory damages awarded.” Its conclusion that punitive damages must be retried such that the jury has an opportunity to increase the punitive damages relative to the final compensatory damages award evinces, an incorrect understanding of the “reasonable relationship” that punitive damages must bear to an award of compensatory damages.
The order is wrong that a new trial on punitive damages is required because the compensatory damages award was increased and wasn’t yet final.- The Florida Supreme Court has long “disavowed” a strict rule “that punitive damages must bear some reasonable relation to compensatory damages, because the amount of compensation for loss is an entirely separate matter from the amount of punitive damages.” Arab Termite & Pest Control Inc. v. Jenkins, 409 So.2d 1039, 1042 (Fla. 1982) (citation omitted). This is an Engle case. And similar to the view expressed in Arab Termite, Engle recognized that “an award of compensatory damages is not a prerequisite to a finding of entitlement of punitive damages.” Engle, 945 So.2d at 1262 (emphasis added). “Compensatory and punitive damages serve distinct purposes.” Id. The Engle opinion’s extended discussion of the differences between compensatory and punitive damages highlighted the United States Supreme Court’s observation that these two types of damages serve different functions and require substantively different assessments by the jury:
[Compensatory damages] are intended to redress' the concrete loss that the plaintiff has suffered by reason of the defendant’s wrongful conduct. [Punitive damages], which have been described as “quasi-criminal,” operate as “private fines” intended to punish the defendant and to deter future wrongdoing. A jury’s assessment of the extent of a plaintiffs injury is essentially a factual determination, whereas its imposition of punitive damages is an expression of its moral condemnation.
Id. (quoting Cooper Indus., Inc. v. Leatherman Tool Grp., Inc., 532 U.S. 424, 432, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001)). Engle concluded its .discussion by noting that “[b]ecause a finding of entitlement to punitive damages is not dependent on a finding that a .plaintiff suffered a specific injury, an award of compensatory damages need not precede a determination of entitlement to punitive damages.” Id. (emphasis added). See also Brown v. Ford, 900 So.2d 646, 648 (Fla. 1st DCA 2005) (noting that punitive damages require a showing “that the defendant acted with malice, moral turpitude, wantonness, willfulness, or reckless indifference to the rights of others”) (emphasis added).
Similar to Arab Termite and Engle, this Court has distinguished between'compen *296 satory and punitive damage verdicts. In Taylor, we reversed a trial court’s decision to grant a new punitive damages trial on the basis of an inadequate compensatory-damages verdict. 443 So.2d at 253. We recognized there that the rationale for granting a new punitive damages trial must stand on its own and not be purely derivative of having granted a new trial on compensatory damages: “the reasons given for granting a new trial must be such as would support a finding that the verdict was against the manifest weight of the evidence or that the jury had been influenced by outside considerations.” Id. The trial court did not attribute either of these other problems to the punitive damages verdict here.
Additionally, the jury instructions below reflected marked differences in the evidence and assessment required of the jury to award non-economic and punitive damages. Compare Phase I Instruction on Non-Economic Damages (requiring non-economic damages to be assessed based upon the “loss of [spousal and parental] companionship and protection ... instruction and guidance ... and their mental pain and suffering as a result of [Mr.] Danielson’s illness and death”) with Phase II Instruction on Punitive Damages (“Punitive damages may be awarded against [Appellant] only on the conduct that is the basis for your finding that [Appellant] is hable to [Appellee] for concealment or omission of a material fact or information and/or agreement to conceal or omit a material fact or information.”). Consequently, the jury’s compensatory and punitive damages verdicts here corresponded to two very different assessments. It does not follow that the same problems that plagued the jury’s defective compensatory damages verdicts also plagued its punitive damages verdict, at least the trial court didn’t conclude that they did.[2]
The trial court concluded that the punitive damages had to be retried because the economic damages had been revised upward to $2.3 million and the amount of non-economic damages also stood to be increased after a new trial. Because of the increasing compensatory damages, the court concluded that a new jury must be given the same opportunity to increase the punitive damages award at a corresponding rate. But increases in the compensatory damages are not a proper basis for granting a new punitive damages trial. Again, compensatory and punitive damages are different; they “serve distinct purposes.” Engle, 945 So.2d at 1262. Courts aren’t at liberty to re-try punitive damages cases simply because they think the award is inadequately low. St. Regis Paper Co. v. Watson, 428 So.2d 243, 247 (Fla. 1983) (noting that the “well settled” rule that a new trial may be ordered when a punitive damages award is excessive does not extend to granting a new trial because the trial court views the punitive damages to be inadequate).
*297 The incorrect amalgamation of damages in this case stems from confusion about the requirement that compensatory and punitive damages bear a “reasonable relationship” to each other. It is true indeed that due process-related concerns attend punitive damage awards that far exceed the size of a compensatory damages award. See § 768.73(1)(a)1., Fla. Stat. (defining an excessive award); Wackenhut Corp. v. Canty, 359 So.2d 430, 435-436 (Fla. 1978) (discussing excessive verdicts). And it is the court’s job to “ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered.” Engle, 945 So.2d at 1265 (citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)). As a best practices matter and to mitigate the potential for excessive awards, courts most often try compensatory and punitive damage cases together before the same jury. See, e.g., Webb, 93 So.3d at 339-40. This gives courts “an adequate starting point to compare the lump sum punitive damages amount to compensatory damages to ensure there is some reasonable relationship” and avoid excessive punitive damage judgments. Engle, 945 So.2d at 1265. In Engle, for instance, the $145 billion punitive damages award was reversed because reviewing courts lacked “an adequate starting point to compare the lump sum punitive damages amount to compensatory damages to ensure there is some reasonable relationship.” Id.
But the rule from these precedents is not that punitive damages awards must be vacated every time some facet of the compensatory damages award must be retried. Rather, a jury’s punitive damages award should survive, irrespective of problems with the compensatory damages award, if there remains an adequate starting point for comparing the amount of punitive damages to the compensatory damages and determining that the punitive damages award is not excessive.
In this case, no one argues that the $325,000 punitive damages award is excessive. The relatively small amount of punitive damages (compared against the much larger compensatory damages award) doesn’t render the award defective: “If the jury may choose to award no punitive damages, it may also choose to award as small an amount as it deems appropriate to meet the goals of punishment and deterrence.” St. Regis Paper Co., 428 So.2d at 247. The order below noted a 1:1 ratio in the jury’s previous award of compensatory and punitive damages as a basis for reversing, as though the jury had been asked to render its punitive damages verdict in the form of a ratio instead of a dollar figure. But this wasn’t the jury’s instruction. Rather, the court instructed the jury “to decide the amount of punitive damages, if any, to be assessed as punishment against [Appellant], and as a deterrent to others.” (Emphasis added). The jury awarded $325,000 in accordance with its instructions that required an assessment based on specific punitive damages evidence; comparative numerology didn’t control the jury’s decision. Here, the court’s post hoc observation that the jury’s punitive damages award created a round-number ratio with the compensatory damages award is interesting, but not legally significant to the point of requiring a new trial.[3]
*298 We thus conclude, consistent with our precedent in Taylor, that “[although a trial judge has broad discretion to grant or deny new trial, a judge may not substitute his view of the evidence for that of the jury. A new trial is not to be granted unless no reasonable jury could have reached the verdict rendered.” Taylor, 443 So.2d at 253 (citing Fla. First Nat’l Bank of Jacksonville v. Dent, 404 So.2d 1123 (Fla. 1st DCA 1981) & Griffis v. Hill, 230 So.2d 143 (Fla. 1969)). In this case, the trial court didn’t find, and we cannot conclude, that no reasonable jury could.have reached the punitive damages verdict rendered, or that, it was against the manifest weight of the evidence. The new trial op the non-economic damages did not require a new trial on the punitive damages as the trial court erroneously concluded. Therefore, we reverse the order granting a new trial on punitive damages and reinstate that verdict.
III.
We therefore AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this .opinion,
WINOKUR, J., CONCURS WITH OPINION; BILBREY, J., CONCURS IN PART AND DISSENTS IN PART WITH OPINION.

. Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla. 2006).

. The dissent disagrees and infers that a paragraph elaborating the trial court’s reasons for ordering "a new trial on non-economic damages” equally sets forth the court’s rationale for ordering a new trial on punitive damages. That short paragraph reads:
The jury misapplied the law regarding damages in this case, ignored the Court’s instructions, and was led by adverse passions and prejudice against the Plaintiff in reaching its verdict regarding damages. Thus, it is necessary to order a new trial on non-economic damages.
(Emphasis added). Taking these words at face value, we don’t agree that this paragraph gives the trial court’s reasons for granting a new punitive damages trial. In fact, the order goes on to list its reasons for why "a new trial on punitive damages is also necessitated” in an entirely separate paragraph that is devoted exclusively to punitive damages.

. Of course, there will always be a ratio that can be calculated in cases involving these two types of damages, sometimes with round numbers and sometimes not. But legally speaking, the ratios aren’t meaningful except insofar as a punitive damages award approaches statutory or constitutional bounds of excessiveness. See § 768.73(1)(a)1., Fla. Stat. *298 (a punitive damages award is not presumed excessive unless it exceeds ‘‘[t]hree times the amount of compensatory damages awarded to each person entitled thereto”); Campbell, 538 U.S. at 425, 123 S.Ct. 1513 ("few awards exceeding a single-digit ratio between punitive and compensatory damages, to a signifl-cant degree, will satisfy due process”). As discussed above, we know already that this case will ultimately be resolved with something less than 1; 1 ratio, which is not statutorily or constitutionally troublesome. This is not a case where the ratio presents an appropriate basis for reversal.