# Supreme Court of Florida

––––––––––

No. SC2024-0058

––––––––––

**ISAAC "IKE" PERLMUTTER, et al.,**
Petitioners,

vs.

**FEDERAL INSURANCE COMPANY, et al.,**
Respondents.

June 11, 2026

MUÑIZ, C.J.

In Florida, a claimant must make a reasonable evidentiary showing and obtain the trial court's permission before pleading a claim for punitive damages. Then, at trial, the standard of proof for punitive damages claims is clear and convincing evidence. The question is whether the clear and convincing evidence standard applies when the trial court evaluates the sufficiency of the claimant's evidentiary showing at the pleading stage. We hold that it does not.

I

1

Harold Peerenboom initiated this lawsuit by suing Isaac and Laura Perlmutter for defamation, alleging that the couple were responsible for a hate mail campaign against him. The Perlmutters countersued for defamation, theft, and invasion of privacy. Eventually, they sought the trial court's permission to add counterclaims for punitive damages. The narrow issue before our Court involves the legal standard for evaluating the evidentiary showing that a claimant must make before being allowed to plead such claims.

We begin by identifying some basic features of our state's law of punitive damages. Traditionally, those damages have been available to address "egregious wrongdoing" that "constitutes a public wrong." *Chrysler Corp. v. Wolmer*, 499 So. 2d 823, 825 (Fla. 1986). Punitive damages are imposed not to compensate the plaintiff, but for punishment and deterrence. *Id.* Given these underlying purposes, Florida courts have long allowed juries to consider the financial worth of the defendant in cases where the law and facts would allow an award of punitive damages. *See, e.g.,*

*Jones v. Greeley*, 6 So. 448, 449 (Fla. 1889). Importantly, even when the plaintiff has established the predicate for an award of punitive damages at trial, the decision whether to make such an award is left to the jury's discretion. *St. Regis Paper Co. v. Watson*, 428 So. 2d 243, 247 (Fla. 1983). In that sense, punitive damages are fundamentally different from compensatory damages, which the plaintiff is entitled to once the defendant's liability has been established. *Id.*

This case centers on section 768.72(1), Florida Statutes, one of many measures the Legislature has enacted over time to limit overreach in the pursuit of punitive damages. It reads:

> In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend her or his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure. The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.

Our Court has held that this provision "creates a substantive legal right not to be subjected to a punitive damages claim and ensuing

financial worth discovery until the trial court makes a determination that there is a reasonable evidentiary basis for recovery of punitive damages." *Simeon, Inc. v. Cox*, 671 So. 2d 158, 160 (Fla. 1996) (citing *Globe Newspaper Co. v. King*, 658 So. 2d 518, 519 (Fla. 1995)). In this case, the parties' dispute principally involves the first sentence of section 768.72(1) and the legal meaning of the phrase "a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of [punitive] damages."

The Legislature adopted section 768.72(1) (originally numbered section 768.72) in 1986. *See* ch. 86-160, § 51, Laws of Fla. Until that time, a claimant "could first plead punitive damages and only then begin to look for sufficient evidence to support the claim." *Kraft Gen. Foods, Inc. v. Rosenblum*, 635 So. 2d 106, 110 (Fla. 4th DCA 1994). Defendants had limited safeguards against unwarranted discovery of information about their financial worth, in part because district courts were divided over the availability of certiorari to review nonfinal orders denying motions to dismiss or to strike punitive damages claims. *See Martin-Johnson, Inc. v. Savage*, 509 So. 2d 1097, 1098 (Fla. 1987) (highlighting the conflict in

- 4 -

practice among the district courts).

In *Tennant v. Charlton*, 377 So. 2d 1169 (Fla. 1979), our Court recognized that unlimited financial worth discovery could be used unfairly to coerce settlements and to expose the "personal and private financial affairs" of defendants "in cases where there is no actual factual basis for an award of punitive damages." *Id.* at 1170. So we advised that, in evaluating motions for protective orders limiting financial worth discovery under Florida Rule of Civil Procedure 1.280(c), trial courts could "consider, among other things, whether or not an actual factual basis exists for an award of punitive damages." *Id.* Section 768.72(1) essentially builds on the approach our Court suggested in *Tennant*.

This case also involves section 768.72(2) and (3), which the Legislature added in 1999 (without changing the text of what is now section 768.72(1)). *See* ch. 99-225, § 22, Laws of Fla. Section 768.72(2) says in relevant part that: "A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence." It then goes on to define the terms "intentional misconduct" and "gross negligence."

Section 768.72(3) sets out the conditions under which punitive damages can be imposed against an employer for the conduct of its employee or agent.

By enacting section 768.72(2), the Legislature heightened the trial-level standard of proof for punitive damages from the common-law "greater weight of the evidence" test to "clear and convincing evidence." Section 768.72(2) also altered the law by codifying and defining substantive legal standards ("intentional misconduct" and "gross negligence") to govern the availability of punitive damages. Before then, the common law had provided that "[a] legal basis for punitive damages exists where torts are committed in an outrageous manner or with fraud, malice, wantonness or oppression." *Wackenhut Corp. v. Canty*, 359 So. 2d 430, 435-36 (Fla. 1978).

## 2

The parties here disagree over whether, under section 768.72(1), Isaac and Laura Perlmutter should be permitted to plead punitive damages in their counterclaims against Harold Peerenboom and two other parties. As we have mentioned, the case started when Peerenboom sued the Perlmutters for defamation and

related claims. *Fed. Ins. Co. v. Perlmutter*, 376 So. 3d 24, 29 (Fla. 4th DCA 2023). Peerenboom and the Perlmutters had been involved in acrimonious disputes over the management of Sloan's Curve, the Palm Beach community where they all lived. Peerenboom alleged that the Perlmutters had orchestrated a series of mailings falsely telling his friends, neighbors, and business associates that he had committed vile acts, including murder and child molestation.

The Perlmutters counterclaimed, alleging conversion, civil theft, abuse of process, defamation, invasion of privacy, and civil conspiracy. The couple maintained that Peerenboom's accusations about their involvement in the hate mail campaign were knowingly false and that Peerenboom intended to intimidate them and to hurt Isaac Perlmutter professionally. They alleged that Peerenboom and William Douberley (an insurance company lawyer representing Peerenboom in a different lawsuit) had used a pretextual deposition in that case to collect the Perlmutters' DNA from items they touched at the deposition and then left behind. According to the Perlmutters, Peerenboom later bullied a private lab into producing false test results linking Laura Perlmutter's DNA to DNA found on

- 7 -

the hate mail; then, armed with the flawed test results, Peerenboom allegedly lied about the Perlmutters to the Palm Beach Police Department and to two media outlets.

Eventually, the Perlmutters filed a motion in the trial court asking permission to amend their counterclaims to seek punitive damages against Peerenboom, Douberley, and Douberley's employer, Federal Insurance Company. *See* Fla. R. Civ. P. 1.190(f) (implementing section 768.72(1)). Each of the counterclaim defendants opposed the motion. Peerenboom argued that he did not know there was anything wrong with collecting and testing the Perlmutters' DNA, since both his lawyer (Douberley) and the Palm Beach Police Department knew about it and did not object. He also denied that there was any impropriety in the testing process itself. Douberley argued that collecting items the Perlmutters had touched and discarded at a deposition was not improper and that he was not involved in either the subsequent DNA testing or the dissemination of the results to the police and the media. And Federal Insurance maintained that its management had no contemporaneous knowledge of Douberley's role in attempting to collect the Perlmutters' DNA.

After a hearing at which it considered the Perlmutters' written evidentiary submission and heard legal argument from the parties, the trial court granted the Perlmutters' motion to amend their counterclaims to seek punitive damages. Peerenboom, Douberley, and Federal Insurance appealed the trial court's order to the Fourth District Court of Appeal. *See* Fla. R. App. P. 9.130(a)(3)(G). The district court then took up the appeal en banc and reversed, with two judges dissenting. *Perlmutter*, 376 So. 3d at 28.

The Fourth District framed its analysis by announcing two conclusions about the interpretation of section 768.72(1). It first held that "a trial court must consider the evidentiary showing <u>by all parties</u> at the hearing on the motion to amend, that is, evidence 'in the record' and evidence 'proffered by the claimant.'" *Id.* at 33 (underscoring in original). Second, the district court explained that it would look to the trial-level standard of proof set out in section 768.72(2) to inform its understanding of the evidentiary showing required by section 768.72(1). Reading section 768.72(1) and (2) together, the district court held: "[W]e interpret section 768.72(1) and (2) to require the trial court to make a <u>preliminary determination</u> of whether a reasonable jury, viewing the totality of

- 9 -

proffered evidence in the light most favorable to the movant, could find by clear and convincing evidence that punitive damages are warranted." *Id.* at 34 (underscoring in original). The district court emphasized that the trial court, in making its "preliminary determination," should not itself decide whether the evidence is clear and convincing, should not weigh evidence, and should not determine witness credibility. *Id.*

Against that interpretive backdrop, the district court explained why it thought the trial court had erred by allowing the Perlmutters to plead punitive damages claims. At the threshold, the district court observed that the Perlmutters had alleged "intentional misconduct" under section 768.72(2). *Id.* at 35. It then explained its conclusions that the evidence was "ambiguous" on the issue of Peerenboom's and Douberley's intent and that the Perlmutters' claims impermissibly depended on the "stacking of circumstantial inferences," which "could never meet the clear and convincing evidence standard at trial." *Id.* As to Federal Insurance, the district court held that there was insufficient evidence to show that the company had known about and approved Douberley's acts. *Id.* at 37.

- 10 -

The Fourth District certified that its decision conflicted with five other district court decisions, two from the Second District Court of Appeal and three from the Fifth.[1] In contrast to the Fourth District, the district courts in the conflict cases did not apply the "clear and convincing evidence" standard when assessing the reasonableness of a claimant's evidentiary submission in a proceeding under section 768.72(1). For example, in *Werner Enterprises*, the Fifth District said that the court's task is simply "to determine if there is a reasonable view of the evidence that supports the plaintiff's position." 362 So. 3d at 283.

The Fourth District also certified a question of great public importance that mostly overlaps with the conflict issue. The certified question is:

> On a motion to amend to add a punitive damages claim, does section 768.72(1) and (2), Florida Statutes, when read *in pari materia*, require a trial court to make a <u>preliminary determination</u> of whether a reasonable jury, viewing the totality of evidence identified in support of or opposition to the motion, and in the light most favorable

---

1. The conflict cases are: *Deaterly v. Jacobson*, 313 So. 3d 798 (Fla. 2d DCA 2021); *Wiendl v. Wiendl*, 371 So. 3d 964 (Fla. 2d DCA 2023); *Estate of Despain v. Avante Group, Inc.*, 900 So. 2d 637 (Fla. 5th DCA 2005); *Werner Enterprises, Inc. v. Mendez*, 362 So. 3d 278 (Fla. 5th DCA 2023); and *Cook v. Florida Peninsula Insurance Co.*, 371 So. 3d 958 (Fla. 5th DCA 2023).

- 11 -

to the movant, could find by clear and convincing evidence that punitive damages are warranted?

*Perlmutter*, 376 So. 3d at 38 (underscoring in original).

We accepted jurisdiction upon the Perlmutters' notice invoking our discretionary review of the Fourth District's decision. As we explain below, we agree with the Perlmutters that the Fourth District erred in its interpretation of section 768.72(1). Our answer to the certified question is no. We quash the decision below and remand for the district court to apply the standard for section 768.72(1) that we explain in our decision today.

## II

### 1

Recall the disputed sentence in section 768.72(1): "In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." The certified question raises two related but distinct issues about the operation and meaning of this provision. The first issue is whether a trial court applying the statute should consider only evidence identified or put forward by the claimant, or

whether the court should also consider an evidentiary submission by the opponent. The second issue is whether the trial court should consider the "clear and convincing evidence" standard of proof when determining if the evidence shows a reasonable basis for the recovery of punitive damages. For clarity, we will begin by stating our conclusions on these two issues, and then we will explain our reasoning.

First, for the reasons we set out below, in a proceeding under section 768.72(1), the trial court should consider only the evidence identified or proffered by the claimant; it should not entertain an evidentiary counter-submission from the opponent.

Second, the test for deciding evidentiary sufficiency under section 768.72(1) is whether a reasonable person could conclude, based on the claimant's evidence, that the defendant committed "intentional misconduct" or "gross negligence," as defined in section 768.72(2). *Cf. Bric McMann Indus. Inc. v. Regatta Beach Club Condo. Ass'n, Inc.,* 378 So. 3d 652, 654 (Fla. 2d DCA 2023) (asking whether the claimant's "proffered evidence provided facts from which one could reasonably conclude that the [defendant's] conduct" met the statutory definition of intentional misconduct). If

- 13 -

the claimant seeks to plead punitive damages against an employer under a theory of vicarious liability, the evidentiary sufficiency test also must ask whether a reasonable person could conclude that the claimant's evidence satisfies the substantive legal criteria set out in section 768.72(3).  Finally, "[b]ecause punitive damages never stand alone," the trial court must "review the request for punitive damages in the context of the underlying claims."  *LoanFlight Lending, LLC v. Wood*, 388 So. 3d 1027, 1031 (Fla. 3d DCA 2024); *see also Soffer v. R.J. Reynolds Tobacco Co.*, 187 So. 3d 1219, 1221 (Fla. 2016) ("[A] demand for punitive damages is 'not a separate and distinct cause of action; rather it is auxiliary to, and dependent upon, the existence of an underlying claim.' " (quoting *Liggett Grp., Inc. v. Engle*, 853 So. 2d 434, 456 (Fla. 3d DCA 2003))).  In all events, however, in reviewing the sufficiency of the evidence under section 768.72(1) at the pleading stage, the trial court should not apply the clear and convincing evidence standard of proof.

The trial court does not act as a fact-finder in a proceeding under section 768.72(1).  It must not weigh the claimant's evidence, meaning that its role is not to decide the truth of the matter.  In conducting its review, the trial court must "consider the record

evidence and the proffered evidence in the light most favorable to the plaintiff." *Hosp. Specialists, P.A. v. Deen*, 373 So. 3d 1283, 1287 (Fla. 5th DCA 2023). Of course, the allegations contained in the claimant's proposed amended complaint are not themselves evidence—the whole point of a proceeding under section 768.72(1) is to determine whether the claimant can show reasonable evidentiary support for those allegations.

2

In fairness to the Fourth District, this is not a case where the statute's legal meaning springs clearly from the bare language of the text. Section 768.72(1) is unusual in that it "mixes pleading and evidence." Henry P. Trawick, *Trawick's Florida Practice and Procedure* § 6-22 (1987 ed.). To complicate matters further, the statute employs vague standards ("reasonable showing" and "reasonable basis") that lack an established legal meaning in this context. And our task requires us to determine the relationship between subsections of section 768.72, subsections that the Legislature enacted at different times without giving express instructions about how to harmonize the old and new provisions. Nonetheless, the words and context of section 768.72(1) lead us to

conclude that the statute mandates a procedure that is less complex—both procedurally and substantively—than what the Fourth District envisioned.

On the issue of the evidence to be considered by the trial court, we note that the text of the statute expressly contemplates a burden of production for the claimant but mentions no role for the opponent. The thrust of the statute is to ensure that the claimant itself can show evidentiary support for a proposed punitive damages claim—not to require an evaluation of the claimant's showing in the light of contrary evidence submitted by the opponent. Even though section 768.72(1) undoubtedly departs from the norm by requiring a pre-pleading evidentiary showing at all, we adopt the interpretation that is most consistent with the ordinary rules of civil procedure. One would expect an express command if the Legislature intended for the trial court to evaluate competing evidentiary submissions at the pleading stage. *Cf.* Debra Salisbury, *Trawick's Florida Practice and Procedure* § 11:10 (2026 ed.) (On a motion to dismiss for failure to state a claim, "[a]ffidavits, discovery, oral statements, or testimony cannot be used to support or attack the pleading.").

- 16 -

Similarly, on the issue of the evidentiary sufficiency standard under section 768.72(1), we note that the express words of the text do not tie the reasonableness inquiry to the trial-level standard of proof. On the contrary, the phrase "reasonable showing by evidence . . . which would provide a reasonable basis for recovery of [punitive] damages" suggests a more straightforward and less technical analysis. Our interpretation is anchored in reading the words in the context of a law that governs the pleading stage of litigation, which, of course, involves a less-than-complete record and occurs early in the proceedings. Absent express instructions from the Legislature, we are reluctant to read into the section 768.72(1) inquiry a consideration—the trial-level standard of proof—that ordinarily plays no role at the pleading stage.

The textual contrast between section 768.72(1) and a related statute supports our interpretation. Section 400.0237, Florida Statutes, governs the pleading of punitive damages in the nursing home context. When the Legislature enacted the initial version of section 400.0237 in 2001, the text of the statute was materially the same as section 768.72(1). Ch. 2001-45, § 9, Laws of Fla. Then, in 2014, the Legislature substantially amended the nursing home

punitive damages provision.  *See* ch. 2014-83, § 2, Laws of Fla.  It now reads:

> The court shall conduct a hearing to determine whether there is sufficient admissible evidence submitted by the parties to ensure that there is a reasonable basis to believe that the claimant, at trial, will be able to demonstrate by clear and convincing evidence that the recovery of [punitive] damages is warranted . . . .

§ 400.0237(1)(b), Fla. Stat.  Unlike section 768.72(1), this provision expressly calls for evidentiary submissions by "the parties."  And it expressly tells the trial court to determine whether there is a reasonable basis to believe the claimant could satisfy the "clear and convincing evidence" standard at trial.

The respondents and the Fourth District read section 768.72(1) as if it mandates essentially the same procedure and evidentiary sufficiency standard as section 400.0237(1)(b).  We find that untenable.  By respecting and giving effect to the substantial textual differences between these related provisions, our interpretation of section 768.72(1) honors the Legislature's choices and protects the coherence of Florida's statutory law.  *See W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 100 (1991) ("Where a statutory term presented to us for the first time is ambiguous, we

- 18 -

construe it to contain that permissible meaning which fits most logically and comfortably into the body of both previously and subsequently enacted law.").

3

Though we ultimately disagree with the Fourth District and the respondents about the best interpretation of section 768.72(1), we acknowledge that their arguments are not without force. Like the Fourth District, the respondents emphasize that section 768.72(1) and (2) must be read together. They maintain that the question whether there is a "reasonable basis for recovery of [punitive] damages" necessarily requires the trial court to decide whether a reasonable jury could find that the claimant can satisfy the trial-level standard of proof.

The Fourth District and the respondents are undoubtedly right that individual provisions in a statutory scheme must be interpreted with due regard for the other parts of the legislative plan. Indeed, one cannot apply section 768.72(1) without accounting for the substantive punitive damages law established in section 768.72(2) and (3). Nonetheless, we do not think it follows that section 768.72(1) implicitly incorporates the trial-level

standard of proof referred to in section 768.72(2). After all, the pleading stage—even under the unique procedure mandated by section 768.72(1)—is not the time for the claimant to prove its case. Pleading is remote from the "trier of fact" and the factual "find[ings]" mentioned in section 768.72(2).

To support their position, the respondents invoke an analogy to the analysis a trial court conducts when evaluating a summary judgment motion. Specifically, they rely on the seminal case of *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), where the Supreme Court held that "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Id.* at 255. Indeed, perceptive observers have noted that "[t]he language used [in *Perlmutter*] is strikingly similar to the Florida standard for summary judgment under Rule 1.510 or a directed verdict under Rule 1.480." Bruce J. Berman & Peter D. Webster, *Berman's Florida Civil Procedure* § 1.190:21 n.13 (2025 ed.).

But we do not think the text mandates treating a proceeding under section 768.72(1) as something like a preemptive summary judgment hearing. *Cf. State of Wis. Inv. Bd. v. Plantation Square*

*Assocs., Ltd.*, 761 F. Supp. 1569, 1580 (S.D. Fla. 1991) ("Without attempting to determine precisely what type of showing is required by § 768.72, the court believes it must ultimately be a lesser standard than that required for summary judgment."). Under our rules of civil procedure, pleading a claim is about setting forth "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief." Fla. R. Civ. P. 1.110(b)(2). Section 768.72(1) complements that standard in the punitive damages context by requiring the claimant to show that there is a reasonable evidentiary basis underlying the ultimate facts that it seeks to plead. Summary judgment, which would remain available as a screening device later in the litigation, involves different questions and serves a different purpose (i.e., to determine, usually based on a more complete record, whether there are genuine factual disputes that need resolution by the fact-finder).

Finally, we do not agree with the respondents' suggestion that rejecting the Fourth District's interpretation of section 768.72(1) will render meaningless the trial court's gatekeeping role. Courts applying section 768.72(1) under evidentiary sufficiency tests like the one we announce today have frequently upheld orders denying

leave to add punitive damages claims, and they have reversed orders granting leave to add such claims. *See, e.g., McLane Foodservice Inc. v. Wool*, 400 So. 3d 757 (Fla. 3d DCA 2024); *Deen*, 373 So. 3d 1283; *Wiendl*, 371 So. 3d 964; *Five Fran, LLC v. Davis*, 404 So. 3d 581 (Fla. 3d DCA 2025); *Publix Super Mkts., Inc. v. Levi*, 399 So. 3d 1212 (Fla. 2d DCA 2024); *Friedler v. Faena Hotels & Residences, LLC*, 390 So. 3d 186 (Fla. 3d DCA 2024). The existence of these precedents bolsters our confidence that our interpretation of section 768.72(1) will not frustrate the effectiveness of the statute in accomplishing the Legislature's textually evident purposes.

### III

For the reasons we have explained, our answer to the certified question is no. Without expressing any view on the application of section 768.72(1) to the facts here, we quash the decision under review and remand so that the Fourth District can reexamine the case under the construction of the statute we have explained today. We express no view on the merits of the Fourth District's analysis as it relates to any distinct issues presented by the application of section 768.72(3) to the Perlmutters' claims against Federal Insurance. We decline to address the Perlmutters' request that we

- 22 -

rule on the standard of review in appeals from orders granting or denying leave to amend under section 768.72(1), an issue outside the scope of the certified question and on which the district courts are not in conflict. We approve the decisions of the Second and Fifth Districts in the certified conflict cases[2] to the extent those decisions are consistent with our opinion today.

It is so ordered.

LABARGA, COURIEL, GROSSHANS, FRANCIS, SASSO, and TANENBAUM, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal
    Certified Great Public Importance
    Certified Direct Conflict of Decisions

    Fourth District - Case Nos. 4D2022-1558, 4D2022-1560, and 4D2022-1562

    (Palm Beach County)

Elliot B. Kula and William D. Mueller of Kula & Associates, P.A., Miami, Florida; Jesse Panuccio and Jason Hilborn of Boies Schiller Flexner LLP, Fort Lauderdale, Florida; Roy Black and Jared M. Lopez of Black Srebnick Kornspan & Stumpf, P.A., Miami, Florida; and Joshua E. Dubin of Joshua E. Dubin, P.A., Miami, Florida,

---

2. *Deaterly*, 313 So. 3d 798; *Wiendl*, 371 So. 3d 964; *Est. of Despain*, 900 So. 2d 637; *Werner*, 362 So. 3d 278; *Cook*, 371 So. 3d 958.

      for Petitioners

Jordan S. Cohen and Victoria N. Sosa of Wicker Smith O'Hara McCoy & Ford, P.A., Fort Lauderdale, Florida, and Ethan A. Arthur of Wicker Smith O'Hara McCoy & Ford, P.A., Tampa, Florida,

      for Respondent Harold Peerenboom

Brandt Roen and Kenneth R. Drake of Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP, Coral Gables, Florida; and Joseph H. Lang, Jr. and Jeffrey A. Cohen of Carlton Fields, P.A., Tampa, Florida,

      for Respondent Federal Insurance Company

Steven J. Rothman, Travis J. Foels, and Danielle L. Jakeman of Jones Foster P.A., West Palm Beach, Florida; and Dina M. Contri and Robert L. Johnson of Sellars, Marion & Bachi, P.A., West Palm Beach, Florida,

      for Respondent William Marvin Douberley, Esq.

Elizabeth M. Locke, Joseph R. Oliveri, Jered T. Ede, and Eric D. Hageman of Clare Locke LLP, Alexandria, Virginia,

      for Amicus Curiae Michael D. Black MD, MBA

Michael M. Brownlee and Grace Zogaib of The Brownlee Law Firm, P.A., Orlando, Florida; and William W. Large of Florida Justice Reform Institute, Tallahassee, Florida,

      for Amici Curiae Florida Justice Reform Institute, Chamber of Commerce of the United States of America, and American Tort Reform Association

Frank Cruz-Alvarez and David M. Menichetti of Arnold & Porter Kaye Scholer LLP, Washington, District of Columbia; and Cory L. Andrews of Washington Legal Foundation, Washington, District of Columbia,

for Amicus Curiae Washington Legal Foundation

Wendy F. Lumish and Alina Alonso Rodriguez of Bowman and Brooke, LLP, Coral Gables, Florida,

for Amicus Curiae Product Liability Advisory Council

L. Martin Reeder, Jr. of Atherton Galardi Mullen & Reeder, PLLC, West Palm Beach, Florida; and Charles D. Tobin of Ballard Spahr LLP, Washington, District of Columbia,

for Amicus Curiae Cable News Network, Inc.